Ben BUSSEY, Jr., Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Supreme Court of Kentucky.

Sept. 26, 1985.

Larry H. Marshall, Asst. Public Advocate, Frankfort, for appellant.

David L. Armstrong, Atty. Gen., Cicely D. Jaracz, Asst. Atty. Gen., Frankfort, for appellee.

VANCE, Justice.

Appellant Ben Bussey, Jr. was convicted by a jury in the Shelby Circuit Court of attempted first-degree sodomy and was sentenced to 20 years imprisonment. The conviction of the appellant on this offense arose from an incident involving the appellant's daughter, eleven-year-old Karen Bussey. In the early morning hours of that date, appellant's wife, Gladys Bussey, testified that appellant had come home from work and was preparing for bed as usual, but that moments later she observed that he was standing over Karen Bussey, who was asleep on a nearby couch. Mrs. Bussey testified that appellant had pulled down his underwear in front and was exposing himself a few inches from Karen's mouth. Karen Bussey never woke up, and when Mrs. Bussey confronted the appellant, he denied any wrongdoing, and said that he was making sure that Karen was covered up. Other material evidence included testimony by Karen's two brothers of prior incidents of appellant's fondling of Karen, the testimony of Dr. Hans Kaak regarding the existence of "child sexual abuse accommodation syndrome" as he perceived it in Karen, and the testimony of Linda Handorf, a social worker who testified concerning her dealings with the family and of Karen's statements to her that appellant had fondled her. Although Karen Bussey took the stand herself, she had no knowledge of the specific incident charged, and was unresponsive when questioned about prior incidents of sexual abuse by the appellant.

Appellant's first assertion of error, and the primary issue on appeal, concerned the propriety of the trial court's action in admitting psychiatric evidence of the "child sexual abuse accommodation syndrome." Dr. Hans Kaak, a psychiatrist, took the stand for the prosecution at trial and testified that in his expert opinion, Karen Bussey exhibited symptoms of what he termed the "relatively new" concept of child sexual abuse accommodation syndrome. This term, as explained by Dr. Kaak at trial, is what is used to describe a number of symptoms which can be recognized in children who have been sexually abused by someone to whom they are closely related, and in-

cludes, among other things, a tendency to be secretive, frightened, and to experience a great deal of guilt. Dr. Kaak was unable to make any direct link between the alleged abuse of Karen by appellant and the symptoms which she exhibited, and acknowledged that the symptoms could not be distinguished from any symptoms that might have resulted from sexual abuse inflicted upon Karen by someone other than her father. There was testimony that Karen had been sexually abused by her uncles.

■ Appellant objected to the testimony concerning the sexual abuse syndrome on the grounds that, inter alia, the prosecution did not establish that the syndrome is a generally accepted medical concept, and that the evidence is immaterial since the syndrome as described could have been caused by the prior sexual abuse of Karen by her uncles. We agree. The fact that Dr. Kaak admitted that the syndrome's existence may have resulted from sexual abuse inflicted upon Karen from persons other than the appellant makes it immaterial as to the establishment of the appellant's guilt. As a result, the trial court erred in allowing this testimony into evidence, and appellant's conviction must be reversed. We note also that the record does not reveal any attempt made by the prosecution to establish the credibility of the child sexual abuse accommodation syndrome as a concept generally accepted in the medical community.

Appellant presented several other evidentiary arguments which we will now consider in order to give direction to the trial court on retrial.

■ First, the trial court admitted into evidence, over the defendant's objections, testimony of Karen Bussey's two brothers Darren and Benny, concerning at least five instances in which appellant fondled Karen prior to the abuse charged in the indictment. These incidents generally involved appellant playing with Karen's leg and fondling her genitalia. After admitting the evidence, the trial court admonished the jury that the evidence could only be considered by them as it bore on appellant's intent and the existence in him of a lustful inclination. Appellant asserts that these acts were not of the same nature as the act for which appellant was being tried and therefore do not fall into the exception to the general rule of inadmissibility of prior sex crimes. We disagree. Since appellant was being tried for attempted sodomy, this evidence was admissible to show the intent of the appellant in this case. *Young v. Commonwealth*, Ky., 335 S.W.2d 949 (1960); and *Russell v. Commonwealth*, Ky., 482 S.W.2d 584 (1972). However, in any future trial, the admonition to the jury should not indicate that the testimony is admissible to show lustful inclination. *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549 (1985).

■ Next appellant objected to two instances of admission of hearsay evidence concerning his prior sexual abuse of Karen. First, the prosecution called to the stand Linda Handorf, a social worker who had worked on the case, after Karen herself had been called and did not testify concerning anything her father had done to her other than rubbing her legs. Ms. Handorf testified that during her investigation Karen had told her that her father had fondled her genitalia. As the appellant asserts, this hearsay was not justified by the fact that Karen refused to testify on the stand. *Owsley v. Commonwealth*, Ky., 458 S.W.2d 457 (1970). The Commonwealth argues, however, that the necessity of this type of hearsay evidence should cause it to fall within the "residual" exception to the hearsay rule as recognized by the Federal Rules of Evidence. One of the requirements of this rule, however, is that the evidence sought to be admitted be of more probative value than any other evidence available. Ms. Handorf's testimony does not meet this requirement since Karen's brothers were able to testify as to the same facts, and such testimony had at least as much probative value as the testimony offered. Since this evidence does not meet the criteria of the so called residual exception to the hearsay rule, we decline to decide whether such a rule should be

adopted in this case. We hold that the testimony of Ms. Handorf concerning what Karen related to her about her father was inadmissible hearsay.

■ The other instance of hearsay objected to by appellant concerns testimony by a Detective Brenner who stated at trial that Gladys Bussey had told him that she had seen appellant "play" with Karen on two or three occasions. Earlier, Mrs. Bussey had taken the stand and had said that she had never seen appellant sexually abuse Karen other than the incident with which he was charged. However, a proper foundation for Detective Brenner's hearsay testimony was never laid by the questioning of Mrs. Bussey concerning a prior inconsistent statement according to CR 43.-08. *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969). We likewise hold that this testimony was inadmissible hearsay.

■ Appellant objected to testimony of prosecution witnesses at trial referring to the prior sexual abuse of all three of appellant's children by his brothers. The objection was sustained at trial, but the jury was not admonished. For our purposes we will simply note that upon retrial no evidence should be admitted concerning sexual abuse of the other children by the appellant's brothers.

■ Also, upon retrial the Attorney for the Commonwealth shall not cross-examine appellant regarding nonsexual abuse of his children nor about sexual conduct of appellant with other women in the presence of the children.

■ Appellant asserts error by the trial court in permitting the prosecution to call Karen Bussey as a witness with the purported knowledge that she would not be able to testify. It is not clear from the record that appellant sufficiently preserved this argument at the trial level. In any event, this witness was an eleven-year-old girl not shown to be incompetent to testify, and there was no showing that it was a certainty that she would be unable to testify. We hold that the trial court did not err by allowing Karen Bussey to be called as a witness.

Appellant claims that he was prejudiced by not having access, pursuant to a pretrial discovery order, to reports relied upon by Dr. Kaak when he testified. Appellant was allowed to view the reports at trial, and therefore at retrial, this will not be an issue.

■ Finally, appellant objected to the refusal of the trial court to order disclosure of two other files in Dr. Kaak's possession which contained psychiatric information on the two Bussey sons. We agree with the trial court that appellant was not entitled to disclosure of the files because Dr. Kaak's testimony was not based upon material alleged to be contained in the files. We therefore hold that there was no error in the trial court's refusal to disclose these files.

The judgment of the Shelby Circuit Court is reversed for further proceedings in accordance with this opinion.

STEPHENS, C.J., and AKER, GANT, STEPHENSON and VANCE, JJ., concur.

WINTERSHEIMER and LEIBSON, JJ., both dissent by separate opinions.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because I do not believe the admission of psychiatric evidence of the "child sexual abuse accommodation syndrome" amounted to reversible error. It is not necessary for this Court to reach that question in deciding this case. The victim's mother was an eye-witness to the act involved and both of the victim's brothers testified to prior incidents. The expert testimony did not materially contribute to the verdict. Considering the case as a whole I do not believe there is a substantial possibility that the result would have been any different even if the testimony was admitted. *See Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969); RCr 9.24.

Although I do not wish to second guess the prosecution, the introduction of expert testimony in this type of situation may have been unnecessary. There is an unfortunate tendency by both prosecution and defense to overuse experts. I believe that juries are fully capable of deciding questions of fact and weighing the credibility of witnesses without the intervention of psychological experts. Here the defense challenges only the weight of the evidence by alleging error in the admission of the expert testimony.

I would affirm the conviction.

LEIBSON, Justice, dissenting in part.

I agree with the majority opinion, except that I would reverse and dismiss because the defendant asked for and was entitled to a directed verdict of acquittal.

The daughter was asleep at the time of the occurrence. The testimony from the appellant's wife was the *only* testimony in the record to prove that an offense had occurred. She testified to nothing more than a father bending over his sleeping daughter with his sexual organ limp in his hand. When she challenged what he was doing, he said "What did I do?"

Perhaps he should have had his pants up. But there are a lot of reasons why a father would be standing over his sleeping daughter in this condition, some acceptable and some immoral, other than to commit sodomy, a terrible felony carrying a sentence of twenty years' imprisonment.

The evidence falls short of what is necessary to prove an attempt to commit sodomy. KRS 506.010(2) provides that "Conduct shall *not* be held to constitute a substantial step ... unless it is an act or omission which leaves no reasonable doubt as to the defendant's intention to commit *the crime which he is charged with attempting.*" (Emphasis added.) The conduct here falls short of being sufficient to leave no reasonable doubt that the appellant intended to sodomize his daughter.