John Russell MITCHELL, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Nos. 87–SC–753–TRG, 87–SC–754–TRG.

Supreme Court of Kentucky.

Oct. 19, 1989.

J. Andrew White, Louisville, for appellant.

Frederick J. Cowan, Atty. Gen., Elizabeth A. Myerscough, Asst. Atty. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

The captioned cases above are consolidated by order of this court and will be disposed of in this opinion. The appellant contends that his convictions for sodomy and incest, allegedly perpetrated against his infant children, must be reversed because of the prejudicial effect of the erroneous admission of testimony by a social worker concerning what was denominated as a child sexual abuse accommodation syndrome.

In three recent cases we have reversed child abuse convictions where evidence was allowed before the jury concerning the child sexual abuse accommodation syndrome.

In *Bussey v. Commonwealth*, Ky., 697 S.W.2d 139 (1985), we reversed a conviction for attempted sodomy allegedly perpetrated by a father against his infant daughter principally because of the erroneous admission of testimony concerning this syndrome. We said:

"Appellant's first assertion of error, and the primary issue on appeal, concerned the propriety of the trial court's action in admitting psychiatric evidence of the 'child sexual abuse accommodation syndrome.' Dr. Hans Kaak, a psychiatrist, took the stand for the prosecution at trial and testified that in his expert opinion, Karen Bussey exhibited symptoms of what he termed the 'relatively new' concept of child sexual abuse accommodation syndrome. This term, as explained by Dr. Kaak at trial, is what is used to describe a number of symptoms which can be recognized in children who have been sexually abused by someone to whom they are closely related, and includes, among other things, a tendency to be secretive, frightened, and to experience a great deal of guilt. Dr. Kaak was unable to make any direct link between the alleged abuse of Karen by appellant and the symptoms which she exhibited, and acknowledged that the symptoms could not be distinguished from any symptoms that might have resulted from sexual abuse inflicted upon Karen by someone other than her father. There

was testimony that Karen had been sexually abused by her uncles.

"Appellant objected to the testimony concerning the sexual abuse syndrome on the grounds that, inter alia, the prosecution did not establish that the syndrome is a generally accepted medical concept, and that the evidence is immaterial since the syndrome as described could have been caused by the prior sexual abuse of Karen by her uncles. We agree. The fact that Dr. Kaak admitted that the syndrome's existence may have resulted from sexual abuse inflicted upon Karen from persons other than the appellant makes it immaterial as to the establishment of the appellant's guilt. As a result, the trial court erred in allowing this testimony into evidence, and appellant's conviction must be reversed. We note also that the record does not reveal any attempt made by the prosecution to establish the credibility of the child sexual abuse accommodation syndrome as a concept generally accepted in the medical community."

*Id.* at 140–141.

In *Lantrip v. Commonwealth*, Ky., 713 S.W.2d 816 (1986), we again reversed a conviction because of the erroneous admission into evidence of testimony concerning child sexual abuse accommodation syndrome. We said:

"Appellant also contends the trial court erroneously permitted Richard Welch, who holds a Masters Degree in Clinical Social Work, to testify concerning statements made to him by Amanda and also erred in admitting his testimony concerning what he denominated as 'sexual abuse accommodation syndrome.' Amanda was referred to Richard Welch by the Commonwealth Attorney for an evaluation. He testified that she told him her father engaged in repeated acts of intercourse with her and that she did not report this fact immediately because she was afraid. As indicated, Amanda had previously testified in a similar vein. We find nothing in the record to establish or indicate that the history given to Richard Welch by Amanda was for the purposes of treatment. Instead, it ap-

pears she was referred for evaluation. Welch's testimony goes to establish the truth of the matters stated to him because he testified:

'Her behavior subsequent to the incident fulfills the guidelines of the Sexual Abuse Accommodation Syndrome. Few children have been found to exaggerate or invent crimes of sexual molestation.'

"Welch listed five distinct elements of the sexual abuse accommodation syndrome. They were, (1) secrecy, (2) helplessness, (3) entrapment and accommodation, (4) delay in disclosure, and (5) retraction. He said that Amanda fit all of the categories except that she had not retracted her story."

"There was no evidence that the so-called 'sexual abuse accommodation syndrome' has attained a scientific acceptance or credibility among clinical psychologist or psychiatrists. Even should it become accepted by the scientific community that a child who has been sexually abused is likely to develop certain symptoms or personality traits, there would remain the question of whether other children who had not been similarly abused might also develop the same symptoms or traits. If so, the development of these symptoms or traits characteristic of the alleged 'syndrome' would not suffice, per se, to prove the fact of sexual abuse. Under the circumstances of this case it was error to permit the testimony of Richard Welch concerning the statements made to him by Amanda of the testimony that she fulfilled the criteria of the 'sexual abuse accommodation syndrome.' "

*Id.* at 817.

In *Hester v. Commonwealth*, Ky., 734 S.W.2d 457 (1987) we again restated our disapproval of testimony relating to a child sexual abuse accommodation syndrome.

In this case, a witness with a degree in social work but who was not a psychiatrist, psychologist, or medical doctor, was permitted over objection to testify in a rambling discourse through 30 pages of the recorded transcript of evidence about the psychological reactions of children who have been subjected to sexual abuse. At no time did she relate her testimony to the appellant or to any of the victims of the alleged abuse. As a matter of fact, this witness had not consulted with any of the children and expressed no opinion whatever as to whether any of them suffered from a child sexual abuse accommodation syndrome.

She testified that this sexual abuse accommodation syndrome was generally accepted by "clinicians" without specifying what clinicians she referred to, but there was no medical testimony of any nature whatever that this syndrome has become a generally accepted medical concept.

In essence, the witness testified that the syndrome consisted of five elements or symptoms, namely, secrecy, helplessness, accommodation, delay in reporting, and retraction. She testified that child sexual abuse begins in secrecy, that the child is usually helpless against an authoritative figure, that this causes the child to accommodate the abuse, that some children do not immediately report the abuse, and after it is eventually discovered or reported will retract the accusation.

There was no testimony that all children who are sexually abused exhibit these symptoms, nor was there testimony that children who have not been sexually abused do not sometimes exhibit some of the elements of the syndrome. There was no testimony that sexual abuse by other persons than the accused could not have produced the same symptoms in the victims.

The child sexual abuse accommodation syndrome is not like a fingerprint in that it can clearly identify the perpetrator of a crime. Even if all of the children of the appellant exhibited some or all of the symptoms of the syndrome, it would not follow that the appellant was conclusively, or even probably, guilty of child abuse. The testimony about the child abuse syndrome, even had it been offered by a psychiatrist or psychologist, and even if it were shown to be a medically accepted concept, was for

the most part irrelevant to the issue of the guilt or innocence of the appellant.

In addition, the witness was permitted to testify that before children attain the age of eighteen years, one out of every three girls has been sexually molested, 60% by a family member and 30% of them by a trusted adult. Assuming the truth of this testimony, it is difficult to see the relevance to the issue of appellant's guilt or innocence. It might lead a jury to believe that the odds are fairly high that appellant was guilty since he was a family member and a trusted adult, and 90% of sexual molestations are perpetrated by family members and trusted adults.

This witness also testified in a general way that child molesters often are not perverts but many times are slightly more educated, will have slightly more money, will be a law abiding person, and may be slightly more religious than the average person. Again, assuming the truth of that testimony, it is not relevant to the issue of whether this particular appellant was guilty or innocent of the charge.

We hold that the testimony concerning the so-called child sexual abuse accommodation syndrome was erroneously admitted into evidence because: (1) there was no medical testimony that the syndrome is a generally accepted medical concept, and (2) the testimony had no substantial relevance to the issue of the appellant's guilt or innocence.

Appellant's contention regarding newly discovered evidence is rendered moot by reason of our decision expressed above, and his contention concerning the indefiniteness of the dates of the commission of the crimes alleged in the indictment is without merit.

The judgment is reversed for further proceedings consistent with this opinion.

STEPHENS, C.J., and COMBS, LAMBERT, LEIBSON and VANCE, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which GANT, J., joins.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion.

This appeal is from a judgment based on a jury verdict which convicted Mitchell of three counts of first-degree sodomy, two counts of third-degree sodomy and two counts of incest. He was sentenced to 191 years.

Mitchell was the stepfather of twin girls and a boy. He became involved with the children's mother when the twins were two or three years old and was often in the home prior to the marriage. He moved into the home permanently when the girls were six years old. He was accused of engaging in repeated sexual misconduct with all three of the stepchildren over a period of approximately ten years. None of the children reported the alleged sexual molestations until one of the girls confided in a counselor after an unsuccessful suicide attempt. Mitchell denied having any type of sexual activity with any of the children. He claims that the children made up the stories with the mother in order to regain possession of the house.

Mitchell argues that it was prejudicial error to allow expert testimony concerning the "child sexual abuse accommodation syndrome." At trial, Mitchell stipulated the credentials of the expert, but objected to the testimony because she did not treat the children and therefore could not state whether the children suffered from the syndrome. He also objected to the testimony as being improper in the order of witnesses. He now raises for the first time the additional argument that the expert opinion was, per se, objectionable. The Commonwealth admits that the expert never examined or counseled the children who were the victims in this case. She was not asked whether these victims suffered from the sexual abuse accommodation syndrome in order to avoid the prohibitions of earlier decisions of this Court where expert testimony regarding the syndrome was held inadmissible because it invaded the prov-

ince of the jury. *Hester v. Commonwealth*, Ky., 734 S.W.2d 457 (1987).

The expert's testimony was general in nature and limited in scope. None of her testimony concerned these particular victims. She did not examine or counsel the victims and did not testify that the victims suffered from sexual abuse accommodation syndrome, that they exhibited any characteristics of the syndrome, or that they had been sexually abused. The expert did not offer an opinion as to the truthfulness of the children, or that generally sexually abused children are truthful when they come forward with their secret. The Commonwealth contends that it offered the testimony only in order to give some information that was not within the common knowledge of the jury. The expert testimony was offered to educate the jury and to aid it in determining the credibility of the testimony heard directly from the victims. Such testimony is admissible if it is outside the scope of common knowledge and experience of the jury and consequently aids them in understanding the evidence and in resolving the issues on their own. *Cf.* Wigmore on Evidence (Chadbourne rev.) §§ 1917, 1923, 1924 (1978).

Expert testimony which explains the psychological dynamics of sexual abuse is relevant because it permits the jury to understand inconsistencies in the victim's behavior. The expert was not rendering an opinion on the specific abuses inflicted in this case and the order of testimony was of no consequence.

*Lantrip v. Commonwealth*, Ky., 713 S.W.2d 816 (1986) and *Bussey v. Commonwealth*, Ky., 697 S.W.2d 139 (1985) are consistent in reaching the conclusion that the testimony of an expert witness concerning the sexual abuse accommodation syndrome was inadmissible where no evidence was offered that the syndrome had attained scientific acceptance or credibility. Here the witness testified that the syndrome is a commonly accepted conceptual framework that is recognized among clinicians in this field. This evidence explains the history of allowing admission into evidence of a victim's first complaint of sexual molestation.

The rationale for admitting such evidence stems from the assumption that failure to complain is an assertion that no crime occurred. Obviously, a competent adult would make an immediate outcry regarding sexual molestation. Delay in reporting or nondisclosure of such incidents is common in children but may not be apparent to the average juror.

The behavioral characteristics of child victims of sexual abuse is beyond the scope of common knowledge and experience of an average juror, and that knowledge of such behavior will aid the jurors in reviewing the victims' testimony and weighing its credibility. The jury could not fully understand the delayed disclosure of the abuse by the children without the assistance of the general expert testimony, and the Commonwealth should not be precluded from presenting forth this evidence.

Other state courts have allowed such general expert testimony but limit its use. *Commonwealth v. Baldwin*, 348 Pa.Super. 368, 502 A.2d 253 (1985) subsequently overruled on basis that expert opinion as to the veracity of victim is improper, provides an extensive review of the approach of other states. *Wheat v. State*, Del.Supr., 527 A.2d 269 (1987) admissible to explain delay in reporting or to explain recantation; *State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983); *State v. Haseltine*, 120 Wis.2d 92, 352 N.W.2d 673 (1984) error in opinion evidence that victim was telling the truth; *State v. Moran*, 151 Ariz. 378, 728 P.2d 248 (1986); *Smith v. State*, 100 Nev. 570, 688 P.2d 326 (1984); *People v. Benjamin R.*, 103 A.D.2d 663, 481 N.Y.S.2d 827 (1984); *State v. Geyman*, 224 Mont. 194, 729 P.2d 475 (1986); *Allison v. State*, 256 Ga. 851, 353 S.E.2d 805 (1987) error in expert testifying that victim had been abused; *State v. Myers*, 359 N.W.2d 604 (Minn.1984); *State v. Catsam*, 148 Vt. 366, 534 A.2d 184 (1987) error in expert testifying that victim suffered from disorder and was telling the truth; *People v. Hampton*, 746 P.2d 947 (Colo.1987) rape trauma syndrome evidence allowed to explain delayed reporting; *People v. Payan*, 173 Cal.App.3d 27, 220 Cal. Rptr. 126 (1985); *State v. Hester*, 114 Idaho 688, 760 P.2d 27 (1988); *Rodriquez v.*

*State,* 741 P.2d 1200 (Alaska App.1987); *Sexton v. State,* 529 So.2d 1041 (Ala.Cr. App.1988).

The province of the jury was not invaded. Opinion evidence must be relevant to be admissible (i.e. there is a delay in reporting or a retraction involved); and it must not decide an ultimate issue of fact (i.e. that the victim is suffering from the syndrome or that the victim is telling the truth). In this case there was a long delay in the reporting and the expert testimony did not embrace an ultimate issue of fact. The testimony as admitted here was proper.

The necessity for having an outside expert explain the syndrome and the reaction of a child to sexual molestation must be viewed in the light of the legal history regarding rape. 4 Wigmore *Evidence* §§ 1134–1140 (Chadbourne Rev.1972) explains the background of admitting into evidence the first complaint of rape by a victim. The rationale arises from the assumption that failure to complain can be viewed as the absence of any crime. If the jury hears of no complaint, they can assume that there was none. Through the years our legal system has recognized that the prosecution should be allowed to rebut such an inference in advance and introduce evidence of the complaint. "Thus the essence of the process consists in showing that the woman did not in fact behave with a silence inconsistent with her present story." *Id.* p. 300.

Practical experience indicates that an adult victim would make a prompt complaint of rape or sexual molestation. However, it is this generally accepted reaction of adults to such a situation that inhibits the prosecution of sexual crimes involving children. The experience of various sex abuse treatment centers indicates that children do not react as adults in this situation. *See Child Abuse Neglect* Vol. 7, pp. 177–193 "The Child Sexual Abuse Accommodation Syndrome" Roland C. Summit, M.D. Clinical studies of sex abuse cases indicate that a typical behavior pattern or syndrome which allows the immediate survival of the child victim within the family but tends to isolate the child from eventual acceptance.

The syndrome recognizes and explains the psychological dynamics at work within the family structure; those being the secrecy surrounding the abuse and the intrinsic helpless-helplessness of the child victim. Thereafter there is a subsequent accommodation of the child to the perpetrator's conduct. Knowledge of these factors certainly aids jurors in understanding why child victims do not report or delay reports of rape and other sexual abuses.

The use of the child sex abuse accommodation syndrome does not deal with mental characteristics but with reactions to a known illegal sexual act. The syndrome is not a hypothesis but has been identified as a syndrome because of the overwhelming frequency within which this psychological situation occurs in child victims.

It is obvious from the opinions of this Court both present and past that the child sexual abuse accommodation syndrome is not highly regarded. Evidently the majority opinion believes what needs to be done is the introduction of expert medical testimony that the syndrome is generally accepted as a medical concept and connection in a relevant manner to the issue of innocence or guilt. The matter of connection is at odds with the decision in *Bussey, supra.* The task of the prosecutor is formidable as demonstrated by the majority opinion. Obviously, great care must be taken in the introduction of any such evidence to avoid the possibility of exaggeration or undue sympathy for either victim or alleged perpetrator. Any search for the truth in a judicial atmosphere must include an understanding of the entire situation involved. I believe that proper use of the child sexual abuse accommodation syndrome can add to the understanding of the jury in this difficult area of the law.

I would affirm the conviction.

GANT, J., joins in this dissent.