**COMMONWEALTH of Kentucky, Movant,**

v.

**Ramona CRAIG, Respondent.**

**No. 88–SC–675–DG.**

Supreme Court of Kentucky.

Jan. 18, 1990.

Frederic J. Cowan, Atty. Gen., Frankfort, Carol C. Ullerich, Asst. Atty. Gen., for movant.

Ken Taylor, Daugherty, Thomas and Taylor, Nicholasville, for respondent.

GANT, Justice.

Respondent, Ramona Craig, was indicted for the murder of her husband, George Craig. She was convicted of voluntary manslaughter and sentenced to ten years imprisonment. On appeal, the Court of Appeals reversed, and this court granted discretionary review.

The sole issue on this review is the "battered woman syndrome" and the evidence concerning this given by a witness, Phyllis Alexander, and other evidence given by Ms. Alexander and excluded by the court.

In deciding this case, we must examine several factors. The first of these is the use of the word "syndrome" in this particular field. Certain syndromes are medical in nature and so defined, such as Guillain–Barré syndrome, which is acute febrile polyneuritis. The diagnosis of such a syn-

drome requires specialized medical expertise and qualifications.

However, the word "syndrome" as used in connection with the question posed herein is not medical in nature, either physical or mental, and no similar diagnosis is required. This type syndrome is defined in *Webster's New Collegiate Dictionary* as "a set of concurrent things (as emotions or actions) that usually form an identifiable pattern." It is also defined as "a characteristic pattern of behavior"; "the emotional and behavioral characteristics of a person"; "a set of characteristics regarded as identifying a certain type."

We next examine the actions of the decedent which may have culminated in the creation of an identifiable pattern of a "battered woman syndrome." Over the five-year period of their courtship and marriage, the scenario is virtually a textbook example of abuse. Once during Ramona's pregnancy George held a hot iron to her inflated stomach and on a second occasion during this pregnancy he was observed chasing her down an alley and knocking her down. He beat her on numerous occasions, threw a hammer at her when she refused him sex, handcuffed her to a bed once and to a large fan on another occasion. He followed her to work one day and choked her until the manager intervened.

In fact, he was given a 60–day suspended sentence for a part of this conduct, which was probated on condition he have no contact with his wife. He promptly violated this condition by going to the house where Ramona was staying and, in front of Ramona's children, pulled a gun and shot Ramona in the head, leaving the place in shambles and covered with blood. He was again arrested, serving 30 days with 60 days probated, and again the condition of probation was to stay away from Ramona. He again violated the probation, and threatened to kill Ramona. Three days after this threat, Ramona shot and killed him.

The third piece of this puzzle concerns the qualifications of Phyllis Alexander. She was the Director of the Y.W.C.A. Spouse Abuse Center in Lexington and in daily contact with battered women for five to six years. She has a Master's degree in counseling and had devoted the past five to six years teaching, studying, researching and writing in the field of "battered woman syndrome." She has testified as an expert on the subject in courts and before the General Assembly of Kentucky.

Prior to trial, the defense served required notice that it intended to use Ms. Alexander as an expert witness and, for the convenience of the court, took her video deposition. The yardstick to be applied to expert opinions is set out in Lawson, *Kentucky Evidence Law Handbook*, Sec. 6.10, as follows:

(A) Proper Subject Matter: Expert opinion testimony is admissible only if (i) it involves a matter that is scientific, technical or specialized in character and is outside the scope of common knowledge and experience, and (ii) it will aid the jury in understanding the evidence or resolving the issues.

(B) Expert Qualifications: An expert witness is one who possesses specialized knowledge about a subject matter that is appropriate for expert opinion testimony. The qualifications of such a witness in a given case is a matter that addresses itself to the sound discretion of the trial court.

Professor Lawson goes on to say:

Nearly everything of value that could be said about the general qualifications of expert witnesses is contained in this statement:

While it is clear that a witness in order to be competent as an expert must show himself to be skilled in the business or profession to which the subject about which he is called to testify relates, there is no precise rule as to the mode in which such skill or experience must be acquired. A witness may become qualified by practice or an acquaintance with the subject. He may possess the requisite skill by reason of actual experience or long observation. The decision as to qualification of the witness as an expert rests in the discretion of the trial court. *Kentucky Power Company v. Kilbourn*, Ky., 307 S.W.2d 9, 12 (1957).

■ The entire problem in this case can be laid at the feet of *Commonwealth v. Rose*, Ky., 725 S.W.2d 588 (1987). This case placed the battered wife syndrome under the category of a mental condition and held that only a psychiatrist or a clinical psychologist would thereby be qualified to testify as an expert. This holding was unnecessary to the case in *Rose*, as the registered nurse who was sought to be utilized as an expert did not qualify by reason of training or experience. However, *Rose* now stands for two erroneous maxims—one, that the battered wife syndrome is a mental condition and, two, that only a psychiatrist or a clinical psychologist can testify as an expert. For that reason, *Commonwealth v. Rose, supra*, is expressly overruled.

■ At trial, the lower court permitted Phyllis Alexander to testify "regarding the characteristics and consequences of the battered wife syndrome" but, under the constraints of *Rose, supra*, would not allow her to go further. On remand, the lower court should permit Ms. Alexander to be qualified as an expert and, as such, subject to the general rules applicable to expert opinions, including her opinion of whether Ramona Craig was suffering from that syndrome at the time of the shooting of George Craig. She shall not, however, be permitted to voice her opinion on whether the shooting was the result of the syndrome.

The Court of Appeals is affirmed, and this case is remanded to the Fayette Circuit Court for a new trial in accordance with this opinion.

COMBS, LAMBERT and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., LEIBSON and VANCE, JJ., dissent.

LEIBSON, J., files a dissenting opinion in which STEPHENS, C.J., joins.

VANCE, J., files a dissenting opinion in which STEPHENS, C.J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The Majority Opinion has overruled *Commonwealth v. Rose*, Ky., 725 S.W.2d 588 (1987), and embarked upon an uncharted sea. This Opinion erodes safeguards in the law on the use of expert testimony that protect against the use of unqualified opinions as evidence. It will have adverse effect in future cases for both sides, the Commonwealth and the criminally accused.

Our Court orders that on remand Ms. Alexander, Director of the YWCA Spouse Abuse Center, shall be permitted to "include her opinion of whether Ramona Craig was suffering from that ["battered wife"] syndrome at the time of the shooting of George Craig."

At trial Ms. Alexander was permitted as an expert, as a social worker and counselor, to explain the usual characteristics and consequences of the battered wife syndrome. The problem is that she was not qualified to opine on the mental state of the accused at the time she pulled the trigger, but the Majority sanctions the use of her unqualified opinion.

Ms. Alexander was followed to the stand by the appellant who gave vivid and dramatic testimony of the continuing abuse she suffered during her turbulent marriage. The combined testimony from Ms. Alexander and the appellant fully explained the battered woman syndrome to the jury and then permitted the jury to identify the appellant as a person suffering from the syndrome at the time she shot her husband. Ms. Alexander was no more qualified than was the jury, by either her training as a social worker or by experience, to state her conclusion regarding the accused's state of mind at the time she pulled the trigger. She was well qualified to give the profile of a battered wife, but that is the extent of her expertise. Expert opinion evidence presupposes the witness is more qualified and better suited than the jury to draw the inference as to the fact at issue. The issue was the accused's mental state at the time she pulled the trigger and the Majority Opinion concedes the "expert" has

no special knowledge or training in determining an individual's mental condition.

The Majority Opinion states:

"*Rose* now stands for two erroneous maxims—one, that the battered wife syndrome is a mental condition and, two, that only a psychiatrist or a clinical psychologist can testify as an expert."

This is wrong for on both scores: (1) it is not the *Rose* opinion but the essential nature of the testimony that qualifies the battered wife syndrome as descriptive of a "mental condition"; and (2) *Rose* does not say who "can testify as an expert," but only that anyone seeking to do so must be qualified.

If the battered wife (or spouse abuse) syndrome is not an explanation of the accused's "mental condition" offered to prove she believed she was acting in self-defense, what else is it and why is it relevant in this case? The Majority Opinion confuses "mental condition" with "medical in nature." A mental condition need not be a diseased or abnormal mental condition before we should require that the witness be skilled in diagnosing a mental condition before testifying about it. On the contrary, whether the accused's mental state represents normal or abnormal psychology is beside the point; the point being whether it equates with the mental state appropriate for a finding that the accused believed she was acting in self-defense.

*Rose* does not hold that "only a psychiatrist or a clinical psychologist can testify as an expert," as the Majority opines. All *Rose* holds is that these are persons who are experts in diagnosing an individual's "mental condition" whereas social workers are not.

Ms. Alexander was well qualified to counsel and assist women who had been battered by their husbands. Some of these women had been so affected by their experiences that they would have believed it necessary to shoot their husband in self-defense, and some would not. Ms. Alexander was simply unqualified to give expert opinion that Ramona Craig was under the influence of the battered wife syndrome and

felt compelled to shoot her husband at the moment she pulled the trigger.

The evidence in the record is that the battered wife syndrome is a pattern of characteristics that has no specific medical significance. If this is so, it is profile testimony and nothing more. We should not permit use of testimony, either to acquit or convict, to the effect that a person fits a profile, whether it be the profile of a drug courier, a battered wife spouse, or a sexually abused child. It is uncontradicted that many persons exhibit characteristics fitting such patterns even though they would not be diagnosed as possessing such mental conditions.

In this case the trial court found that the social worker lacked the "necessary professional education and experience to enable [her] to testify as to the mental condition of the defendant or to diagnose a mental condition of 'battered wife' syndrome." The record supports this. The trial court's finding should not be set aside.

The trial judge applied *Rose* precisely as written. *Rose* should be followed and the conviction should be affirmed.

STEPHENS, C.J., joins this dissent.

VANCE, Justice, dissenting.

Respectfully, I dissent. The majority opinion is now authority for the proposition that a social worker who has worked extensively with women who have been battered and beaten by their husbands can qualify as an expert and express an expert opinion that a particular woman either was or was not suffering from a so-called "spouse abuse syndrome" at the time she shot and killed her husband.

At no place in the opinion, however, does the majority define what it means by the use of the term "battered wife syndrome." Without question, the appellee was a battered wife. She testified to a long history of physical abuse by her husband. Not all women who suffer repeated and continuous abuse from their husbands suffer from a "battered spouse syndrome", however. Some do and some do not. There is something more to the "battered wife syn-

drome" than a wife who has been repeatedly battered.

Some battered wives develop a sense of helplessness to the extent that, in their mind at least, the only escape from abuse is to kill the abuser. Call it what you will, this is a condition of the mind, perhaps of an irrational mind, but if a battered wife suffers from such a delusion, it may explain why it appeared necessary to her to kill her husband when, in fact, it would not under the circumstances, appear so at all to a normal person or to a juror. The existence of such a condition of mind can be used to support a plea of self-defense.

Because it is a condition of mind which may cause one to labor under a mistaken belief, it is essential that only those who are qualified to diagnose aberrant mental conditions be permitted to testify concerning whether a particular person has developed such a mental condition as a result of spouse abuse.

Unless there is some competent evidence that a "battered wife syndrome" is a generally accepted medical concept, I question whether the social worker should have been permitted to even describe the syndrome. I certainly do not believe that she should have been permitted to make the diagnosis that the appellee was suffering from such a state of mind. In that respect, the ruling of the trial court was correct, and I would affirm the judgment.

STEPHENS, C.J., joins in this dissent.