David Allen DYER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 90–SC–248–MR.

Supreme Court of Kentucky.

Sept. 26, 1991.

1) The evidence was insufficient;

2) Error in admitting an exhibit, consisting of miscellaneous pictures, reading materials and personal memorabilia, seized from an apartment the appellant shared with a female companion, which lacked relevancy other than to bolster the prosecution's unsubstantiated claim that he fit the profile of a "pedophile"; and

3) Error in the prosecutor's repeated reference to the appellant as a "pedophile" when there was no evidence to support this charge.

We conclude there was evidence sufficient to support a conviction, but we reverse on points two and three stated above, for reasons that follow.

In April of 1989, Officer Gerald Curtis of the Maysville Police Department received a call from a social worker about a report of child molestation by the appellant. The alleged victim was a ten-year old boy. Curtis viewed the social worker's tape recorded interview with the boy in which he stated, *inter alia,* that the appellant showed him pictures of naked boys and girls from a "Playboy" magazine, and Curtis then obtained a search warrant for "magazines containing photographs of an obscene and sexual nature."

The police went to the apartment occupied by the appellant and his girlfriend and there seized various items from different locations within it which included in and under a bedroom bookcase and from within various boxes unidentified as to source or ownership. At trial a portion of this material was identified by the investigating officer, and then introduced as a group as "Exhibit 1."

Exhibit 1 included: some old posters of former teenage idols, an article on adolescent sexual behavior on a page torn from "Hustler" magazine and another page from the same magazine with pictures on it of a naked man and two women with their sex organs exposed, a pamphlet entitled "First Hand" graphically illustrating and describing hard-core homosexual activity, miscellaneous pictures of boys cut out from various newspapers and other publications such as

J. Kirk Griggs, II, Lexington, for appellant.

Frederic J. Cowan, Atty. Gen., Lana Grandon, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

LEIBSON, Justice.

The appellant was indicted and convicted of Sodomy in the First Degree committed on a boy under 12 years of age. He was sentenced to twenty years in the penitentiary, and he appeals as a matter of right, claiming three errors:

a mail order catalogue, and some nondescript notes from an individual named "Don." It appears the pages and photographs torn or cut out of the magazines was done, at least in part, by the police during the process of gathering this material.

At trial the boy testified that appellant performed acts of oral sex on him, and, on occasion, appellant masturbated at the same time. He also explained that appellant was a neighbor who had befriended him, and he would often go to the appellant's house to watch TV. Appellant had taken him to the library, horseback riding, and to play tennis. Sometimes appellant's girlfriend went with them. The boy testified the appellant showed him pictures of "naked" girls and boys in "a 'Playboy' book," but the boy was not asked to identify any of the material in "Exhibit 1" as having been shown to him. Commonwealth's "Exhibit 1" was introduced solely through the testimony of Officer Curtis. When offered, the prosecutor advised the judge:

> "He [the boy] just described what type of pictures he was shown, Judge. I don't think the boy can identify any particular pictures."

The investigating officer could not identify which among the materials seized belonged to the appellant, and which to his girlfriend. When the court commented as to one of the pictures, "This is just a picture of a ball club, isn't it?", the prosecutor responded, "He [the appellant] certainly could explain [it] to the jury if he testifies."

Both the appellant and his girlfriend did testify. The appellant denied that any sexual acts occurred between him and the boy. He testified he let the boy watch TV because the boy's TV at home was broken. He had taken him to the library, to play tennis, horseback riding, and even, on one occasion, on a visit to the home of the appellant's grandmother in Ohio. He stated that the boy was angry because he did not buy new Reebok tennis shoes for him for Christmas, which he promised to buy if the boy's grades at school improved. Since

they did not improve, the appellant did not buy the shoes.

Appellant's neighbor testified he saw the boy and another youth named Jonathan attempting to break into appellant's apartment with a knife at the back door the day after Christmas. The boy's mother testified that she brought her son to appellant's house so he could apologize for the attempted break-in. The boy's mother also testified she was having problems with the boy's lying and had talked to the social worker about having him see a counselor for it.

The appellant identified some of the posters as belonging to his sister from years back when she was a teenager, and when the girlfriend testified she said some of the material seized was hers. During his testimony the appellant denied cutting out any of the obscene articles and pictures seized by the police, and said they were probably 10–15 years old. The obscene articles themselves were undated, except the pages from "Hustler" magazine were a "December" issue. Appellant identified "Don" as a fellow from the neighborhood who left these notes in an attempt to be friendly. Appellant said he stopped being friendly with Don when he suspected Don might be "gay."

Originally appellant leased the apartment where the search was conducted, but at the time of the search the apartment had been leased in the girlfriend's name, and the appellant was in the process of moving out. Appellant's girlfriend identified some of the posters and other materials seized as belonging to her. Officer Curtis admitted he could not say whose magazines they seized and he did not know who cut out the articles.

The Commonwealth undertook to prove the appellant was a pedophile as central to its case. In his opening statement the prosecutor said "I think we'll persuade beyond any doubt that this defendant is a pedophile." This word has never been precisely defined for purposes of this case, nor

has there been any clear explanation of what it is supposed to prove in this case.[1]

Officer Curtis, when undertaking to describe what was found as a result of the search of the apartment, said, *inter alia,* "and also there's an article that, from a magazine that the author attempts to defend pedophallia [sic?]." Later on, at the end of his direct examination, the prosecutor asked Officer Curtis:

"Q. 26. You've used the word, pedophile. Tell the jury what pedophile means.

A. Pediphee (sic?) is the adult engaging in sexual activity with children.

Q. 27. Have you had any training regarding pedophiles?

A. Yes, sir."

The prosecutor then asked Officer Curtis: "Basically, would you describe to the jury the behavior of a pedophile?" Whereupon defense counsel objected and the prosecutor did not pursue the matter further.

On cross-examination the officer was asked by defense counsel:

"Q. You only seized anything you thought might depict something as I believe the search warrant said, of a pornographic nature.

A. Anything that would—yes, sir, that would relate to, ah, possible characteristics of a pedophile.

Q. I see. And do you think that posters showing teen age stars or whatever is toward the aim of determining or finding something that would depict a pedophilia (sic)?

A. Not in and of itself, it could eventually fall into the characteristics of a pedophile compared with other material."

In closing argument the prosecutor said: "[The police] came as close as proving what's in this defendant's mind as you can prove. No, we can't ever get into his mind and say 'here's a picture of his mind. Here's what he's thinking.

Here's the perversion, the filth, the degradation and sickness of mind.' We can't show you all that, but we can show you what he had. Ladies and gentlemen, that's a picture of a pedophile, pure and simple. Typical pedophile."

In closing argument the prosecutor also said:

"I don't think there's any problem with the fact that David Dyer went out of his way to do things ... to take him riding, to promise to buy him things, then asked him over to the house to let him watch television, because this is typical, that's what you do when you're a pedophile. You treat them nice."

At this point appellant's counsel objected "to this constant use of a term here." The court "sustained" the objection and admonished the jury: "Don't consider his reference to the defendant being pedophile." Of course, by this point it was far too late for such an admonition to have made any difference. Strangely enough, the prosecutor then continued the same line of argument by commenting at length on the contents of "Exhibit 1," and the defendant's objection to this was "overruled."

The jury had a difficult time with this case. One and a half hours after they began deliberating they told the judge: "We just feel that we have not had enough evidence." They then asked to view the videotape of the child's interview with the social worker and were told the tape was not part of the evidence. When asked why the social worker had not been called to testify the judge responded "I am just the judge." The jury went back to deliberate and approximately two and a half hours later they informed the court that they couldn't agree. The *Allen* charge was then given. One hour later the jury reached a "guilty" verdict.

The first question is whether there was evidence to convince the jury beyond a reasonable doubt sufficient to comply with the standard in *Commonwealth v. Sawhill,*

**1.** What "pedophile" and "pedophilia" describe, if anything, in the standard nomenclature of psychiatry is nowhere provided in this case. For what it is worth, Webster's Ninth New Collegiate Dictionary (1983 ed.) defines "pedophilia" as "sexual perversion in which children are the preferred sex object," and "pedophile" as "one affected with pedophilia."

Ky., 660 S.W.2d 3 (1983), and the federal due process standard established in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), especially in light of what occurred after the jury began deliberating. At the threshold the Commonwealth argues the issue is not preserved because the defendant's motion for a directed verdict at the close of the Commonwealth's case was not renewed at the close of all the evidence, citing our Court's Opinion in *Commonwealth v. Blair*, Ky., 592 S.W.2d 132, 133 (1980), in which this Court stated:

> "The procedural rule, as clarified in *Kimbrough* [*Kimbrough v. Commonwealth*, Ky., 550 S.W.2d 525 (1977)], is that in order for the issue of the sufficiency of the evidence to be preserved for appellate review, the party wishing to use the insufficiency as a basis for his appeal must have moved for a directed verdict at the close of all the evidence, not just at the close of the Commonwealth's case in chief."

The *Kimbrough* rule is sound where the defense presents evidence after the Commonwealth's case which may have been sufficient to *cure* any evidentiary insufficiency, but *Kimbrough* is at best a state procedural rule which must give way to the constitutional mandate that a conviction based on insufficient evidence cannot stand. Indeed, Blair, Borders, and Carpenter, whose convictions were affirmed by our Court in *Blair, supra,* were later held entitled to relief by way of *habeas corpus* in *Carpenter v. Leibson*, 683 F.2d 169 (6th Cir.1982), the U.S. Court of Appeals stating (*Id.,* 172–73):

> "Since it was not even contended that the evidence offered by the defendants after the denial of their motions for a directed verdict supported the Commonwealth's case, the state had no legitimate interest in requiring a renewal of the motion for a directed verdict.

> . . . .

> There is really no need to determine whether the Supreme Court of Kentucky properly applied a new rule or not in *Kimbrough,* as the Supreme Court [of Kentucky] nevertheless should have ruled on the sufficiency of the evidence under the facts and circumstances existing in the present case."

Unlike a decision of the United States Supreme Court, our Court is not bound in subsequent cases by a United States Court of Appeals' decision. *Cf. Conklin v. Commonwealth,* Ky., 799 S.W.2d 582 (1990). But the reasoning in *Carpenter v. Leibson* on this point is persuasive. In criminal cases the application of the procedural rule in *Kimbrough* and *Blair* must be limited to situations where the evidence adduced subsequent to the defendant's motion for a directed verdict is sufficient to cure any evidentiary shortfall which exists at the time it is made.

■ The problem for the appellant in this case is the evidence fails to raise a question of sufficiency; it raises only a question of credibility. Even if the evidence of the alleged victim is viewed as uncorroborated, standing alone it is still sufficient to prove all the elements of the crime charged, and to create a jury issue. It has long been the rule in Kentucky in rape cases that "the unsupported testimony of the prosecutrix, if not contradictory or incredible, or inherently improbable, may be sufficient to sustain a conviction," *Robinson v. Commonwealth,* Ky., 459 S.W.2d 147, 150 (1970), and there is no rationale for a different rule in a sodomy case. Here, although uncorroborated, the testimony of the alleged victim is neither self-contradictory, incredible, nor inherently improbable, and standing alone it is sufficient to withstand a challenge under *Commonwealth v. Sawhill, supra,* and *Jackson v. Virginia, supra,* even though the bulk of the evidence mitigated against it.

■ Unfortunately, although the boy's testimony was sufficient to make a case, the Commonwealth, unwilling to rest its case on the boy's testimony, sought to bolster that testimony with the contents of the appellant's bookcase. But the boy never established relevancy by identifying any of the evidence seized from the apartment shared by the appellant and his girlfriend

as having been shown to him. At the time the material in Commonwealth's "Exhibit 1" was offered, it was with the excuse that "it supports the child's testimony that he was shown this type of literature." The Exhibit falls far short of this claim. The material in "Exhibit 1" is far beyond the boy's description of what he saw in the appellant's apartment. It is obvious the real purpose, the sole purpose, of this evidence was, in general, to prove the appellant was a sexual pervert, and, in particular, to prove that his perversion was pedophilia, and to do so on the basis of reading material found in his possession some of which would offend a substantial number of jurors, prejudicing them against the appellant without regard to whether it proved anything against him. The various pornographic pictures and articles and the nondescript photographs and memorabilia were devoid of meaning except that provided by the investigating police officer's testimony and the prosecutor's argument labeling the material seized proof that the appellant was a pedophile.

We declare, unqualifiedly, that citizens and residents of Kentucky are not subject to criminal conviction based upon the contents of their bookcase unless and until there is evidence linking it to the crime charged. If the boy's testimony was intended to be the connecting link, evidence would be limited to that which the boy could identify as having been shown to him. If this material is supposed to provide a picture of the appellant as a pedophile, such profile evidence is inadmissible in criminal cases to prove either guilt or innocence. *Hampton v. Commonwealth*, Ky., 666 S.W.2d 737, 742 (1984), presented a far stronger case for admitting profile evidence than this one, and, nevertheless, we held the trial court had properly excluded as irrelevant

"... evidence from a witness designated a 'clinical social worker,' who then testified by avowal that in his opinion the appellant 'would not have' become involved with the twelve year old victim because 'based on (appellant's) psychological development, by history,' this vic-

tim was too young to attract the appellant."

In *Hampton*, we held:

1) A social worker is not "qualified as an expert to express an opinion" on the mental condition at the time of the act of a person criminally accused.

2) "The testimony as proffered went to the ultimate question of the guilt or innocence of the appellant, ..."

3) "Mitigating" evidence (and, conversely, aggravating evidence) does not qualify as admissible except perhaps as "background information" in the penalty phase of a death penalty case.

We have long recognized a distinction between testimony about the mental condition of an accused and "his actual mental attitude at a particular time and place" when he allegedly committed a crime, *Koester v. Commonwealth*, Ky., 449 S.W.2d 213, 215 (1970), stating:

"It is the difference between an objective opinion and a subjective conclusion. [citation omitted.] Or put another way, it is the difference between the mental abnormality and the specific 'product' produced thereby."

In *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549, 553 (1985), we held "[t]he trial court correctly refused Pendleton's attempt to introduce the testimony of psychologist Kroger.... to the effect that Pendleton's psychological profile was not consistent with that of a sex offender." We stated:

"An opinion as to whether the accused had the ability or propensity to commit such an act [sodomy of a six year old] is improper because it is an opinion on the ultimate fact, that is, innocence or guilt." *Id.*

■ If the testimony of a trained psychologist to the effect that the accused does or does not have a "profile ... consistent with that of a sex offender" is inadmissible, *a fortiori*, the testimony of an investigating police officer that an accused has the profile of a pedophile, based on the contents of his library and miscellaneous memorabilia found in his residence,

falls short of the threshold of admissible evidence. Officer Curtis' opinion suffers from all of the defects covered in *Koester, Hampton* and *Pendleton,* plus failing to meet elementary principles involved in determining relevancy. *See* Lawson, *Kentucky Evidence Law Handbook,* § 2.00 (2d ed. 1984). The trial court's decision to admit the Commonwealth's "Exhibit 1" as evidence in this case was prejudicial error.

Further, because the contents of Commonwealth's "Exhibit 1" were central to the Commonwealth's opening and closing argument to the effect that the Commonwealth would prove, and did prove, that the appellant was a pedophile, and to the testimony of the investigating police officer in support of this premise, these comments and this testimony were improper. The Commonwealth argues lack of preservation to this line of argument and testimony. The appellant responds that since his counsel objected vehemently and profusely to Commonwealth's "Exhibit 1," these objections should suffice to protect against further testimony and comment generated by the admission of this Exhibit. The record shows the appellant objected on some occasions, but not on others, at the continuing effort to label him a pedophile, and to using this characterization to bolster and support the case against him.

In the context of this case using the terms against the accused was error, and we need not decide when and where there was sufficient objection because we have already held the case must be reversed because the use of Commonwealth's "Exhibit 1" was prejudicial error. However, because there may be a new trial, we must address their use.

The terms "pedophile" and "pedophilia" were used here improperly for three reasons:

1) The proof the police officer was qualified to provide expert testimony on the subject was woefully inadequate.

2) No foundation was laid to establish the officer's testimony was "a subject matter appropriate for expert testimony (Lawson, *Kentucky Evidence Law Handbook,*

§ 610(B))." It fails the *"Frye"* test, *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923), which requires proof that the subject matter of expert testimony has attained the general acceptance of the scientific community.

Recently, our Court has been confronted with a series of cases involving a similar problem, wherein the Commonwealth attempted to bolster the testimony of the alleged victim with profile evidence regarding the so-called "child sexual abuse accommodation syndrome": *Bussey v. Commonwealth,* Ky., 697 S.W.2d 139 (1985); *Lantrip v. Commonwealth,* Ky., 713 S.W.2d 816 (1986); *Hester v. Commonwealth,* Ky., 734 S.W.2d 457 (1987); and *Mitchell v. Commonwealth,* Ky., 777 S.W.2d 930 (1989). We reversed all of these cases because the evidence was insufficient to admit the evidence under the *"Frye"* test:

"There was no evidence that the so-called 'sexual abuse accommodation syndrome' has attained a scientific acceptance or credibility among clinical psychologists or psychiatrists. Even should it become accepted, ... there would remain the question of whether other children who had not been similarly [sexually] abused might also develop the same symptoms or traits." *Lantrip, supra,* 713 S.W.2d at 817.

Profile evidence and argument to establish the accused as a pedophile, as a person with a propensity to sexually molest children, is but the opposite side of a coin stamped on the other side "child sexual abuse accommodation syndrome." This "pedophilia" profile appears to be nothing more than the attempt at an end run around the principles that controlled our decisions in *Bussey, Lantrip, Hester,* and *Mitchell.* It will require much more by way of scientific accreditation and proof of probity than we have in the record before us for this testimony to attain admissibility.

■ 3) The only conceivable purpose the terms "pedophile" and "pedophilia" served here was to characterize the mental state of the appellant as a person with an abnormal propensity to engage in "sexual activity with children." This was the framework

in which Officer Curtis defined the term, and the major thrust of the prosecutor's opening statement and closing argument as well as the officer's testimony. In *Commonwealth v. Craig*, Ky., 783 S.W.2d 387, 389 (1990), we held that evidence "Ramona Craig was suffering from [the battered wife] syndrome at the time of the shooting of George Craig" was not evidence of a "mental condition," and we overruled *Commonwealth v. Rose*, Ky., 725 S.W.2d 588 (1987) to the extent the *Rose* case held otherwise. The Majority in *Craig* never explained why or how it reached this result. Three justices dissented from this portion of the *Craig* opinion, Vance, J., stating:

> "Call it what you will, this is a condition of the mind.... used to support a plea of self-defense.
>
> ....
>
> ... I certainly do not believe that ['the social worker'] should have been permitted to make the diagnosis that the appellee was suffering from such a state of mind." 783 S.W.2d at 391.

Concepts such as a "battered woman syndrome" in the *Craig* and *Rose* cases, or a "pedophile" in the present case, have no conceivable bearing on a criminal case *except* as they bear on the accused's mental condition at the time of the alleged offense. The proposition that they should be used as evidence to convict or acquit without further testimony from an expert qualified in the field positively establishing that the condition is a recognized scientific entity, and then tying the accused to this mental state, is indefensible. *Commonwealth v. Craig* was in error, and is overruled to the extent it has overruled *Commonwealth v. Rose* on this point. In the present case, in the event of a retrial no evidence should be admitted, and no argument permitted, characterizing the appellant as a "pedophile," or suggesting that he suffers from "pedophilia," unless there is proof from an expert on the subject qualified to express an opinion about the appellant's mental condition.

The conviction and judgment in this case are reversed, and the case is remanded for further proceedings consistent with this opinion.

COMBS, LEIBSON and SPAIN, JJ., concur.

STEPHENS, C.J., concurs except with respect to the portion of the opinion addressing the *Kimbrough* issue (*Kimbrough v. Commonwealth*, Ky., 550 S.W.2d 525 (1977)).

LAMBERT, J., dissents by separate opinion.

WINTERSHEIMER, J., dissents by separate opinion in which REYNOLDS, J., joins.

LAMBERT, Justice, dissenting.

As Justice Wintersheimer ably demonstrates in his dissenting opinion, the claims of error relied upon by the majority for reversal were not preserved. Moreover, I believe the majority has gone too far in overruling *Commonwealth v. Craig*, Ky., 783 S.W.2d 387 (1990), a decision with the ink barely dry, and reinstating our earlier decision in *Commonwealth v. Rose*, Ky., 725 S.W.2d 588 (1987).

In this case, the majority seems to have abandoned settled rules of preservation and gone well beyond the point necessary for decision. Whether one agrees or disagrees, *Commonwealth v. Craig* was a considered decision of this Court in January of 1990 and it could hardly be said that experience has demonstrated clear error or obsolescence, the grounds typically relied upon for overruling earlier decisions.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because there is clearly sufficient evidence to affirm the conviction of sodomy. The claimed errors do not require a reversal, and the ultimate result upon any retrial will be the same. The trial was fundamentally fair and reversal serves no useful purpose.

Dyer was convicted of first-degree sodomy by engaging in deviate sexual intercourse with a child under the age of 12 years. A jury convicted him of the offense

charged and he was sentenced to 20 years in prison.

Pursuant to the evidence presented at trial, Dyer was not entitled to a directed verdict of acquittal as he first argues on appeal. Dyer has not properly preserved his issue for appellate review because the question was first raised at the close of the prosecution case. This Court has held that in order for the issue of the sufficiency of evidence to be preserved for appellate review, the party wishing to use the insufficiency as a basis for his appeal must have sought a directed verdict at the close of all the evidence, not just at the end of the prosecution's case-in-chief. *Commonwealth v. Blair*, Ky., 592 S.W.2d 132 (1977); *Kimbrough v. Commonwealth*, Ky., 550 S.W.2d 525 (1977). Dyer failed to move for a directed verdict at the close of all the evidence and consequently, this issue was not properly preserved. RCr 9.22.

A review of the record indicates that the evidence presented at trial by the prosecution was sufficient. K.R.S. 510.070 requires proof that the defendant engaged in deviate sexual intercourse with a victim under 12 years of age. Deviate sexual intercourse has been defined as any act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another. Here, the victim who was 11 years old at the time of the trial, testified that he was sodomized by Dyer more than once. Clearly under the evidence as a whole, it was not unreasonable for the jury to find Dyer guilty. *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977).

The testimony of the victim was sufficient evidence to prove all the evidence of the crimes charged. It established a jury issue. The unsupported testimony of the victim was sufficient to meet the burden of proof of the prosecution and the test to refuse a directed verdict of acquittal. Any rational trier of fact could easily have found that the essential elements of the crime beyond a reasonable doubt were in the evidence presented at trial. Although admitting that there is sufficient evidence to support the conviction of sodomy, the majority here seeks to become a self-styled defender of the bookcase. It creates the issue of profile evidence in an effort to justify the reversal of this case and magnifies and elaborates its importance in this case.

The investigating officer testified that he obtained a search warrant for the residence of Dyer for "magazines containing photographs of an obscene and sexual nature." The officer had clear legal authority under both the law of Kentucky and the United States of America to obtain the items which were introduced at trial. Obviously, evidence must be relevant before it is admitted at trial. Here the evidence corroborated the testimony of the victim about the circumstances surrounding the crime. Consequently the photographs and articles in the magazines were clearly relevant and were properly admitted into evidence. Although he later objected on other grounds, there was no objection by defense counsel to the testimony by the victim that Dyer had shown him the pictures in the "Playboy" book of the naked girls and boys.

The issue relative to the materials obtained through the lawful search has not been properly preserved for appellate review. RCr 9.22. A review of the record indicates that there were six references to the use of the term "pedophile." The first reference was during opening statement by the Commonwealth and did not draw an objection. The next two references, also without objection, were made during the case-in-chief of the prosecution. The fourth reference was made by *defense counsel* during cross-examination of the investigating police officer. The two remaining references were made during the closing argument of the prosecution.

The officer testified that the items found during the lawful search included an article from a magazine in which the officer said the author attempted to defend pedophilia. Dyer did not object to this statement. The officer was then asked if he had any law enforcement education on child molestation and he responded "Yes." He was then asked to described the word "pedophile" and the officer testified that "a pedophile is

656

an adult engaging in sexual activity with children." There was no objection to this testimony.

During the closing argument of the prosecutor, he referred to Dyer as a "typical pedophile." Again, there was no objection. The final reference to the term was also during closing argument by the prosecutor and defense counsel objected to the constant use of the term here. The objection was sustained immediately and the jury was properly admonished. No further relief was requested.

Clearly, Dyer failed to object to the use of the term "pedophile" and failed to ask for further relief when his objection was sustained and an admonition given. Therefore, the issue is not properly preserved for appellate review and he cannot seek further relief through the appellate courts. *West v. Commonwealth*, Ky., 780 S.W.2d 600 (1989); *Hamilton v. Commonwealth*, Ky., 659 S.W.2d 201 (1983); *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977); RCr 9.22.

Disregarding the settled law of this State on preservation, sufficiency of the evidence and prosecutorial misconduct, the majority seeks to review its own concept of the issue and reverse the case.

In this situation, the closing argument by the prosecutor was fair comment on the evidence and was admitted without objection at trial. This has been the law in Kentucky for generations. *See Nugent v. Commonwealth*, Ky., 639 S.W.2d 761 (1982).

The police officer was not allowed to describe the behavior of a pedophile but he merely defined the word for the jury as a word used in a magazine article which had already been introduced into evidence. There was no objection to his testimony. The statement by the prosecutor was obviously based on the facts in evidence and reflected a fair inference therefrom. *Williams v. Commonwealth*, Ky., 644 S.W.2d 335 (1982).

In any event, the isolated remarks made by the prosecutor in closing argument did not amount to reversible error when considered in context. *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549 (1985); RCr 9.24.

The majority admits there was evidence sufficient to support a conviction. That should be the end of an opinion affirming the conviction rather than the lengthy majority opinion seeking to rationalize a reversal of the conviction. A careful review of the record clearly indicates that when you consider the quality and sufficiency of the evidence particularly the testimony of the victim and the entire case, there is no substantial possibility that the result upon any retrial will be any different. Consequently, the alleged error, if any, in regard to the "profile evidence" or the use of the word "pedophilia" is clearly nonprejudicial. *Cf. Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969); RCr 9.24. Here, as conceded by the majority, the evidence of the defendant's guilt was clear. There was no prosecutorial misconduct which required reversal. The comments of any prosecutor must be viewed in the context of the total trial and what effect it has on the fairness of that trial. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). See my dissenting opinion in *Morris v. Commonwealth*, Ky., 766 S.W.2d 58 (1989).

The majority uses this relatively simple case to launch a broad and far-reaching attack on another unrelated case. The majority asserts that there is a similar problem which it raises in this case with its so-called "profile evidence rule" regarding the "child sexual abuse accommodation syndrome." Such a statement is totally lacking in logic. Clearly this is not an attempt by the majority to plant a small acorn or even to substitute a sapling; it is a bold planting of a fully mature oak tree when this case is analogized to the child sexual abuse accommodation syndrome. The majority uses this shaky comparison to overrule *Commonwealth v. Craig*, Ky., 783 S.W.2d 387 (1990). *Craig, supra*, involved the affirmance of a manslaughter conviction in which this Court held that the battered woman syndrome is not a mental condition, and expert testimony on the syndrome may come from someone other than

a psychiatrist or clinical psychologist in certain limited circumstances.

A careful examination of the briefs in this case reveals that neither party to the appellate process cited the case overruled or the case used by the majority to perpetrate the overruling. Clearly this is a giant leap in an effort that is totally beyond the authority of even a majority of this Court and has no place in this case. The noble language of the majority in defending the bookcases of the state pales into insignificance when we consider the ultimate invasion of privacy visited upon an 11 year old boy by the sodomy. The conviction should be affirmed in all respects.

REYNOLDS, J., joins in this dissent.