**Albert Conrad KOESTER, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 31, 1969.

Rehearing Denied Feb. 13, 1970.

**214**

Richard H. Nash, Nash & McCrea, Louisville, for appellant.

John B. Breckinridge, Atty. Gen., James Barr, Asst. Atty Gen., Frankfort, Edwin Schroering, Commonwealth Atty., Louisville, Ky., for appellee.

CLAY, Commissioner.

Appellant was convicted under KRS 435.-110 of detaining two young girls against their wills with intent to have carnal knowledge, and was sentenced to three years and two months in the penitentiary for each offense. The questions raised on appeal will be considered after a statement of the pertinent facts, which are not substantially in dispute.

Appellant was 25 years of age and taught school. In an isolated area he came upon the two girls, aged 11 and 12, playing in a field. He made friendly advances and sat down with them. He took one on his lap, and fondled each girl in an immoral manner. He also discussed matters of sex with them. The entire occasion was fraught with erotic implications, in which the girls were apparently unwilling participants. They remained fully clothed. It is rather clear from the evidence that they departed as soon as they conveniently could, although appellant tried to induce them to remain. It is unnecessary to detail further the reprehensible conduct of appellant, which he admits.

Appellant first contends he was entitled to a peremptory instruction because the proof did not establish that he either (1) detained the girls against their wills, or (2) intended to have carnal knowledge of them, both of which elements are required by KRS 435.110. It is said that the girls voluntarily participated in this affair and were not in any illegal sense detained by force or fear. The older girl had moved away when appellant touched her, and she testified she was afraid to leave the younger one. The younger one testified that when she tried to leave "he wouldn't let me go". She also testified that when she tried to get up "he pulled me back down by the arm".

■ Detention may exist without the use of force. Moore v. Commonwealth, 288 Ky. 528, 156 S.W.2d 822 (1941). It has been said that a detention occurs when by any means the free locomotion on the part of the female is interfered with. 1 C.J.S. Abduction § 6, page 285. Or put another way, it is the "interference with the free volition of the woman". Razor v. Commonwealth, 293 Ky. 704, 170 S.W.2d 10 (1943).

■ The evidence, including all the circumstances, shows clearly that these girls were unwilling participants in the enterprise initiated by appellant. They were infants and appellant was a grown man. He was a complete stranger. His uninvited intrusion into the company of these girls, in view of what happened, interfered with their "free volition". Appellant actually exercised some physical restraint on one of the girls and he put the other in fear of leaving without her friend. The jury was justified in finding unlawful detention.

■ With respect to intent to have carnal knowledge, the circumstances likewise would justify such a finding. There is evidence appellant asked the girls to partially undress, and there is more than a hint of intended exposure on his part. The natural outcome of his advances normally would lead to sexual intercourse. He denied such intent and the jury could have believed him,

but the opposite inference was substantiated. See Nerren v. Commonwealth, 268 Ky. 715, 105 S.W.2d 838. The evidence amply supported a verdict of guilt under KRS 435.110.

■ On the issue of intent, it is also contended that the court erroneously ruled that an expert witness could not give his opinion on that question. A psychiatrist had treated appellant for some period of time following his arrest. By avowal it was shown that he would testify as follows:

"Q. Did you form an opinion, based upon reasonable medical certainty, and in your professional capacity, concerning whether or not Albert Koester had the intent to detain the prosecuting witnesses in this case with the intent to have carnal knowledge, or sexual intercourse?

"A. Yes I did.

"Q. What is your opinion, Doctor?

"A. It is my opinion that he did not have any intentions at all to have sexual intercourse with them."

It should be noted that the opinion sought to be elicited from the doctor was that appellant did not have the *specific intent* to have carnal knowledge *of these two girls at the time and place of the incident.* In effect this was an expression of opinion concerning the guilt or innocence of the accused on the very issue it was within the province of the jury to resolve.

■■ As a general rule expert opinions (and even lay opinions) are admissible on the issue of a person's mental capacity or condition. Teeters v. Commonwealth, 310 Ky. 546, 221 S.W.2d 85 (1949); Trust Department of First National Bank v. Heflin, Ky., 426 S.W.2d 128 (1968). Expert opinion evidence as to a person's sanity is also admissible. Dossenbach v. Reidhar's Ex'x., 245 Ky. 449, 53 S.W.2d 731 (1932). While opinion evidence of a mental condition may be relevant on the issue of intent or lack of intent at the time of the commission of a certain act, it is going a step farther to accept as competent an opinion concerning the lack of a specific intent on a particular occasion. Then, in effect, the opinion is not evidence of mental condition but is a factual conclusion of the witness on the ultimate issue before the jury which can be reached only by consideration of all the facts.

This may appear hypertechnical and the drawing of a fine line between admissible and inadmissible evidence, but the line is there. It is a distinction between the capability or incapability of the accused and his actual mental attitude at a particular place and time. It is the difference between an objective opinion and a subjective conclusion. See Dawson v. State, Nev., 439 P.2d 472 (1968). Or put another way, it is the difference between the mental abnormality and the specific "product" produced thereby. In Washington v. United States, 129 U.S.App.D.C. 29, 390 F.2d 444, 456 (1967), in which the difficult problem was thoroughly examined, it was said:

" * * * Thus there is no justification for permitting psychiatrists to testify on the ultimate issue. Psychiatrists should explain how defendant's disease or defect relates to his alleged offense, that is, how the development, adaptation and functioning of defendant's behavioral processes may have influenced his conduct. But psychiatrists should not speak directly in terms of 'product,' or even 'result' or 'cause.' "

Both Wigmore[1] and McCormick[2] are quite critical of the distinctions that have been made between the kinds of admissible and inadmissible expert opinions on the ultimate issue the jury must decide.

1. Wigmore on Evidence, 3rd Ed., sections 1920, 1921 and 1929.

2. McCormick on Evidence (1954), section 12.

However, McCormick says:[3]

"Undoubtedly there is a kind of statement by the witness which amounts to little more than an expression of his belief as to how the case should be decided or as to the amount of damages which should be given or as to the credibility of certain testimony. Such extreme expressions as these all courts, it is believed, would exclude. There is no necessity for such evidence, and to receive it would tend to suggest that the judge and jury may shift responsibility for decision to the witnesses."

In Hargadon v. Louisville and Nashville Railroad Co., Ky., 375 S.W.2d 834 (1964), we expressly declined to follow Wigmore and permit an expert witness to "invade the province of the jury".

We believe that in the field of expert opinion the distinction between the capacity of the accused and his actual subjective intention (or lack of intention) is justifiable, and the conclusion of the expert with respect to the latter is not competent opinion evidence. In the present case the doctor properly could have given his opinion with respect to the mental condition and capacity of the appellant as affecting the probability of his having an intent to have carnal knowledge of the two girls. That encompasses (and substantially exhausts) the full scope of his expert knowledge. To go further, however, and state that appellant did not have that specific intent on the particular occasion involved is a *factual* determination which calls for *something other than an expert opinion*. For that reason it was not admissible as proper opinion evidence and was rightly excluded.

■ Appellant next contends the Commonwealth asked a leading question of one of the prosecuting witnesses, in which he used the word "detained". We are of the opinion that the question summed up fairly what the witness had theretofore said, and in view of the evidence of detention this one question could not have been prejudicial.

■ Appellant also contends that certain testimony of a detective was incompetent and that the closing argument for the Commonwealth was improper. These possible errors, if such, were waived because appellant failed to make objections at the trial. RCr 9.22; Blanton v. Commonwealth, Ky., 429 S.W.2d 407 (1968).

We have observed the jury verdict recommended psychiatric care for the appellant. It is unfortunate that our penal system does not provide adequate facilities for the special treatment of different types of offenders.

The judgment is affirmed.

All concur.