Mary Margaret DEVERELL et al., Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

July 2, 1976.

Joseph S. Freeland, Paducah, for appellants.

Ed. W. Hancock, Atty. Gen., Robert V. Bullock, Asst. Atty. Gen., Frankfort, for appellee.

PER CURIAM.

Mary Margaret Deverell, Gary Bailey, and The Western Corporation were convicted upon a charge of exhibiting an obscene movie, and a judgment was entered levying a fine against each of them.

Upon this appeal there appears to be no merit in any claimed error except the one asserting that the evidence introduced by the Commonwealth was improperly admitted. Upon a trial of the charges, the Commonwealth introduced one witness, Police Officer James Eison, who gave a resume of the contents of a movie, "Temptation and Sin," while simultaneously exhibiting to the jury a video tape of part of the movie. The video tape was in black and white; the movie was in color. The video tape was without sound; the movie presented a minimum of dialogue and a plenitude of loud music. The tape covered some thirty to thirty-two minutes of the forty- to forty-five-minute movie.

The police officer testified that he attempted to film those portions of each episode depicted in the movie which, in his opinion, were the most important. The officer, in giving his resume of the plot of the movie, expressed the opinion that there was hardly any plot at all. His dialogue covers some several pages of the transcript of evidence. In the course of the showing of the tape, the officer carried on a continuing commentary in which he described what was going on, the type and content of the conversation engaged in by the participants in the particular scenes, and the sound effect being produced by way of music. His testimony is replete with expressed opinions of what the characters in the film intended by their conversation and gestures. He graphically described the sex acts depicted, carefully directing the attention of the jury to certain aspects of the activity. He was thus permitted to express his opinion in regard to scenes depicted.

His testimony was, at the best, nothing other than his version of "Sin and Temptation," as drawn from his original viewing of the movie and the video tape exhibited. His testimony had the effect of "herding" the jury, whether voluntarily or reluctantly, along the primrose path of "guilty."

The video tape was made "early in the game" and was exhibited first to a police judge in order to get a search warrant that would permit confiscation of the film. The search warrant is in the record, and the affidavit is so terribly defective that the court quashed the warrant and directed the

return of the confiscated film. Therefore, when the case came on for trial, the Commonwealth was severely hampered by its inability to produce the film.

The admission of the police officer's testimony and the showing of the video tape were over the strenuous objection of the accused. However, the objection to the introduction of the tape concerns itself primarily with the requirement that any determination that the film was obscene must be based upon a consideration of the film "as a whole." The consequence of this argument would result in a finding that a ten-minute lapse in the film destroys the consideration "as a whole," as required in *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and as re-emphasized in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The phrase "as a whole" does not necessarily create the impression of a requirement that the entire work be viewed frame by frame or page by page. *Roth* and *Miller* stand for the proposition that a court cannot lift out of context and use isolated instances of obscenity for the purpose of proving the entire work to be obscene in nature. *Miller* requires that the court proceed to the point where it can make a proper finding concerning the obscenity of a movie. The court is required to weigh the scenes it finds objectionable in relation to the movie as a whole and determine whether its overall worth more than counterbalances possible obscene or pornographic bits or sequences. A footnote in *Cambist Films, Inc. v. Duggan,* 298 F.Supp. 1148 (D.C.1969), suggests that the film itself is the best evidence or indispensable evidence on the question of the nature of the film and that, therefore, the film itself should be the only thing admissible.

It would appear that the video tape might well satisfy the requirements of the United States Supreme Court concerning the viewing of a claimed obscene film. However, this court cannot overlook the consequences of permitting a police officer to testify regarding the film in such a manner as to give his view of the impact a film might have upon the public and expressing conclusionary statements on his part regarding the question of obscenity.

The judgment is reversed for further proceedings consistent with this opinion.

REED, C. J., and JONES, LUKOWSKY, PALMORE, STEPHENSON and STERNBERG, JJ., concur.

CLAYTON, J., dissents.

CLAYTON, Justice. (dissenting).

I respectfully dissent from the majority opinion. Much too often in cases of this type the well-considered verdict of the jury is summarily set aside.

The testimony of Detective Eison neither added to nor took away from the other evidence, and even if the admission of his testimony were error it could not have been prejudicial to appellants. Considering the fact that the sound track of the film consisted of only a negligible amount of dialogue and musical accompaniment, the video tape alone would have been sufficient to support the conviction. In movies such as the one involved in this case where no plot of any significance is discernible and the film is merely a vehicle for the exhibition of repeated scenes of explicit sex, it is my opinion that blind adherence to *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) and subsequent cases is not required. As advanced by the majority, *Roth* stands primarily for the requirement that a work challenged as obscene be viewed as a whole, i. e., that part(s) thereof may not be lifted out of context and judged separately from the whole.

The 32-minute video tape challenged herein amounted to substantially all of what was contained in the 42-minute movie. In *State v. J–R Distributors, Inc.,* 82 Wash.2d 584, 512 P.2d 1049 (1973) the Washington court in a similar obscenity case held that a video tape of eight films was admissible. In *J–R Distributors, Inc.,* the video tape consisted of "segments" spliced together to reproduce the eight films as nearly as possible in their entirety. The actual films had been in color and

projected at 24 frames per second, but the video tape was in black and white and projected at 18 frames per second. Even considering these differences it is seen that the video tape in *J–R Distributors, Inc.* was a reproduction which was substantially the same as the film and thus was admissible. In the instant case the admission of the video tape into evidence was permissible under like reasoning.

The fair and equitable administration of justice does not require that defendants in a criminal prosecution be guaranteed an error-free trial. In *Abernathy v. Commonwealth,* Ky., 439 S.W.2d 949 (1969), this court said at page 952:

" . . . [I]f upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial."

For the foregoing reasons I would affirm the judgment.