George NUGENT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Aug. 31, 1982.

Rehearing Denied Nov. 2, 1982.

William E. Scent, Kenneth S. Matheis, Charles R. Simons, Wyatt, Tarrant & Combs, Louisville, for appellant.

Steven L. Beshear, Atty. Gen., Eileen Walsh, Asst. Atty. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

George Nugent was charged by the Jefferson County Grand Jury with the September 29, 1980 intentional murder of Clark L. Kelly, III. Trial by jury was held, and, on May 16, 1981, the jury returned a verdict of guilty and recommended a sentence of 40 years imprisonment. His appeal is before us as a matter of right. We reverse.

On appeal, Nugent argues: (1) that the evidence was not sufficient to support the conviction; (2) that the trial court committed prejudicial error in admitting opinion evidence as to Nugent's guilt; (3) that the trial court erred in admitting an out-of-court contradictory statement of a witness; (4) that the prosecutor improperly commented on his constitutional right to remain silent; and (5) that a search warrant for his residence was not supported by probable cause.

### I. DID THE EVIDENCE SUPPORT THE CONVICTION?

On Wednesday, October 1, 1980, Kelly's body was discovered in a pile of dirt and

debris on the premises of the Nugent Sand Company, which is adjacent to the Ohio River, in Eastern Jefferson County. Kelly had been shot five times with a .22 caliber weapon. The company is owned and operated by appellant's family and appellant is a regular employee.

On Monday evening, September 20, 1980, at approximately 8:30 p.m., Kelly, Peter Margerum, Lee Early and Kathy Brown met at a restaurant which is a short drive from the sand company. Shortly thereafter, Kelly left the restaurant to deliver four ounces of cocaine to appellant. When 45 minutes had lapsed and Kelly had not returned, Kathy Brown telephoned the sand company and talked to the appellant. Appellant informed her that Kelly had been there, but had left approximately 20 minutes ago. This call occurred at approximately 10:15 p.m. Following the call, the three friends drove to the sand company. Upon arriving, they saw Kelly's van parked near the company offices. Kathy Brown went into the building and talked to appellant who appeared to be very upset and nervous. He told her that Kelly had come to the office by himself but had departed earlier.

She then drove back to the restaurant but was unable to locate Kelly. She returned to the sand company where she accompanied Early into the office to question appellant. He informed them that he had given Kelly $7,500 to purchase four additional ounces. Margerum and Early left and went to Kelly's home, where they were unable to locate him. They immediately returned to the sand company, where Kathy Brown had waited with appellant. About midnight, Kelly's three friends returned to his apartment, still unable to locate him.

On Tuesday, September 30, 1980, at approximately 11:00 a.m., Early and Margerum returned to the sand company and again talked to the appellant. At appellant's request, they drove Kelly's van back to the apartment. The next morning, October 1, 1980, Kelly's body was discovered.

An investigation revealed that there were vehicular tracks leading to the place where the body had been buried. The tracks were made by a payloader which was owned by the company and regularly parked near its offices. The payloader had been driven to the isolated area of the sand company premises and had apparently been used in a somewhat amateurish manner in an effort to conceal the body. Michael Scott, a regular employee of the sand company, saw appellant operating a payloader the evening of September 29. Scott stated that this occurred "around" 9:00 p.m. and was in the area where the body was discovered. The dump area was blocked off by a row of empty barrels. Payloader tracks showed that the vehicle had gone through the barrier and returned to its parking area. Furthermore, even though it was established that appellant owned a .22 caliber revolver, the revolver disappeared from his car between September 29, and October 2, when a search was made. Additional testimony indicated that Kelly may have owed appellant a sum of money.

Basically, appellant argues that the evidence presented does not support the jury's verdict. He attacks it as circumstantial, inconsistent, failing to show a motive and being as consistent with innocence as with guilt.

■ Admittedly, the evidence against the appellant (who did not testify in his own behalf) is purely circumstantial. However, such evidence is sufficient to support a criminal conviction so long as the evidence, taken as a whole, shows it would not be clearly unreasonable for the jury to find the defendant guilty. *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977). That which a jury may reasonably believe to have been probable is sufficient to support a finding of guilt. Probability has been defined as "more likely than not." *Timmons v. Commonwealth*, Ky., 555 S.W.2d 234 (1977).

■ We believe that the evidence adduced and described above supports that it was not unreasonable for the jury to find that the appellant did shoot and kill Clark Kelly. Kelly and Nugent were alone, and

completed a drug transaction which involved a considerable sum of money. Appellant owned a .22 caliber revolver, which disappeared after the killing. Moreover, one of appellant's employees identified appellant as driving a payloader in the area where Kelly's body was found during the approximate time when Kelly was killed. Appellant's described conversations with Kelly's three friends are consistent with a finding of guilt. Under the test of *Trowel, supra,* we will not disturb the verdict of the jury.

## II. DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR IN ADMITTING OPINION EVIDENCE AS TO APPELLANT'S GUILT?

Paul Bryant, an employee of Nugent Sand Company, testified for the prosecution. His testimony disclosed that he had given two statements to the police: one on Friday, October 3, 1980, and another on Tuesday, October 7, 1980.

On direct examination, no reference was made to the first statement and the second statement was used only to refresh the witness's memory. On cross-examination, in an attempt to impeach his credibility, defense counsel introduced a handwritten change which had been made in the second statement. The change described appellant's statement to Bryant that the middle man (Kelly) was going to be dead when he was found. Emphasis was placed on the fact that Bryant had told the interviewing officer that he had always wanted to be a policeman. This fact was used by defense counsel in an attempt to show that Bryant was "playing detective" in the investigation of the Kelly murder, and in so doing, had been influenced by the police. Specifically, defense counsel was attempting to show the witness' state of mind at the time of the first statement.

Because of the prosecution's belief that the defense counsel had put the witness' "state of mind" at issue, on re-direct examination, Bryant was asked to read a previously undiscussed portion of the statement. It disclosed that in response to the inter-

viewing officer's question as to whether Bryant thought that appellant had "dropped the hammer" on Kelly, Bryant had stated "I think he did, you know if you want the honest to God truth." In essence, the trial court permitted the introduction of a written statement which elicited the opinion of a witness as to appellant's guilt.

The Commonwealth argues that since the defense counsel had "opened the door" by inquiring into the witness' state of mind (as appeared in the first written statement) the prosecution had the right to bring out *all* that was said on the subject. We do not agree.

█ A witness, in a criminal case, may be impeached by showing he made a prior contradictory statement or by contradictory evidence. Such evidence is not admissible for that purpose unless it pertains to a material matter. *Caulder v. Commonwealth,* Ky., 339 S.W.2d 644 (1960). Moreover, where the value of evidence for a legitimate purpose is slight and the jury's probable misuse of the evidence for an incompetent purpose is great, the evidence may be excluded altogether. *Caulder, supra, McCormack on Evidence,* (1954), Sec. 59, p. 136. Clearly Bryant's opinion as to appellant's guilt is not admissible. *Kennedy v. Commonwealth,* 77 Ky. (14 Bush) 340 (1878), *Koester v. Commonwealth,* Ky., 449 S.W.2d 213 (1969); *Deverell v. Commonwealth,* Ky., 539 S.W.2d 301 (1976).

As we examine this issue, it is unnecessary to decide whether the entire written statement of Bryant's is admissible to show his "state of mind." We hold that it was clearly erroneous to admit into evidence Bryant's opinion as to appellant's guilt. *Kennedy, Deverell* and *Koester, supra.* Even if the statement is technically admissible into evidence, it is obvious that the purpose was incompetent. *Caulder, McCormack, supra.* The issue of guilt or innocence is one for the jury to determine, and an opinion of a witness which intrudes on this function is not admissible, even through a route which is, at best, "back door" in nature. As we said in *Kennedy,* in reference to similar testimony, "No lawyer

would think of offering such evidence in chief." *Id.,* at p. 359. Due to the nature of the evidence, and its highly prejudicial effect on the jury, we believe the trial court erred in admitting the evidence.

## III. DID THE TRIAL COURT COMMIT ERROR IN ADMITTING AN OUT–OF–COURT CONTRADICTORY STATEMENT OF A PROSECUTION WITNESS?

The Commonwealth called Erick Munson as a witness. On direct examination, he testified that he had known appellant and Peter Margerum for some time. He testified that he had had a conversation with Margerum several weeks after the discovery of Kelly's body. Munson denied that he had told Margerum that appellant had said to him that if Kelly didn't come up with his (appellant's) money, he would kill him. The Commonwealth then called Margerum as a witness. He testified that Munson had, in fact, made such a statement to him.

In *Jett v. Commonwealth,* Ky., 436 S.W.2d 788 (1969), we held that out-of-court statements of a prosecution or defense witness can be received as substantive evidence. There are four prerequisites to such admission: (1) both the person who is alleged to have made the out-of-court statement and the person who says he made it must appear as witnesses, and be subject to cross-examination; (2) a foundation must be laid by asking the witness about the statement; (3) the questioned statement must be contradictory to the witness' in-court testimony or, at least, must provide relevant information which the witness cannot remember at the trial, and, (4) the statement must be material and relevant to the issues of the case. In *Jett,* we rationalized our ruling:

"When both the person who is said to have made the out-of-court statement and the person who says he made it appear as witnesses under oath and subject to cross-examination there is simply no justification for not permitting the jury to hear, as substantive evidence, all they both have to say on the subject and to determine wherein lies the truth, . . . *Id.,* at p. 792.

In this case, Munson was called as a witness for the Commonwealth. He had known both appellant and Margerum for quite some time. He had had a conversation at his home with Margerum after Kelly's body had been found. Munson denied that he had told Margerum that appellant had said if Kelly didn't come up with his money, he would kill him. Margerum, however, testified that Munson had made such a statement to him. All the requirements of *Jett* are present. There is no reason why the jury should not hear what "both have to say on the subject and to determine wherein lies the truth." *Id.,* at 792.

## IV. DID THE PROSECUTION IMPROPERLY COMMENT ON THE APPELLANT'S RIGHT TO REMAIN SILENT?

Appellant owned a .22 caliber revolver which had disappeared after the homicide. In his closing argument, the prosecutor enumerated evidence which he felt pointed to appellant's guilt. He stated:

"No. 4: George Nugent, Smith & Wesson, .22 * * * After Corky Kelly comes out of the ground, that .22 caliber has vanished into thin air. Now, I'll say again: I wonder what would happen if there was a drain plug out in the Ohio River."

Appellant argues that this statement constituted a comment on his failure to testify. He claims the message given to the jury was that appellant owned a pistol and failed to testify, thus offering the jury an explanation of its disappearance.

This argument, at best, is tenuous. The remark is ambiguous and indirect but should not be construed in its most damaging meaning. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The remark may be argumentative but it constituted no more than fair comment on the evidence. *Hunt v. Commonwealth,* Ky., 466 S.W.2d 957 (1971). We find no error and no prejudice here.

## V. WAS ISSUANCE OF THE SEARCH WARRANT SUPPORTED BY PROBABLE CAUSE?

 The warrant to search appellant's residence authorized a search for and a seizure of any personal property belonging to the decedent, any firearms, contraband or narcotics. The affidavits of two detectives investigating the case were submitted to support the issuance of the warrant.

The affidavits recited that Peter Margerum had told them about the cocaine deal between Kelly and appellant; that Margerum told them about the meeting at the restaurant before the delivery of the cocaine to appellant; that Kelly's body was found buried on the premises of Nugent Sand Company; that an employee of the sand company had stated that appellant owned a .22 caliber weapon. In addition, the affidavit described the results of an extensive, independent investigation supporting these facts.

Based on the statements in the affidavits, the issuing judge had sufficient detail to rely on something more reliable than a casual rumor. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). There were reasonable grounds for believing that the property sought to be discovered was on the premises to be searched. *Robinson v. Commonwealth,* Ky., 550 S.W.2d 496 (1977). Under these circumstances, the search warrant was properly issued.

The judgment of the trial court is reversed and remanded.

PALMORE, C.J., and AKER, CLAYTON, O'HARA, STEPHENS and STERNBERG, JJ., concur.

STEPHENSON, J., dissents.

STEPHENSON, Justice, dissenting.

I agree that it was error to permit the jury to hear that portion of Bryant's statement which expressed an opinion as to guilt. However, in the context in which this error was committed and in view of the other evidence in the case, I am of the opinion there is no substantial possibility that the result would have been any different. I would affirm the case and accordingly dissent.