COMMONWEALTH of Kentucky,
Appellant

v.

Floyd WRIGHT, Appellee

and

Floyd Wright, Cross–Appellant

v.

Commonwealth of Kentucky,
Cross–Appellee

2013–SC–000226–DG
2013–SC–000824–DG

Supreme Court of Kentucky.

RENDERED: August 20, 2015

COUNSEL FOR APPELLANT/CROSS–APPELLEE: Jack Conway, Attorney General of Kentucky, Gregory C. Fuchs, Assistant Attorney General

COUNSEL FOR APPELLEE/CROSS–APPELLANT: Brandon Neil Jewell, Department of Public Advocacy

OPINION OF THE COURT BY
JUSTICE KELLER

A jury convicted Floyd Wright of complicity to first-degree trafficking in a controlled substance and of being a second-degree persistent felony offender (PFO II). During deliberations, the court permitted the jurors to use the Commonwealth's attorney's laptop computer to review an audio recording of a controlled buy. The Court of Appeals found that the trial court abused its discretion by doing so and remanded this matter to the trial court for a new trial. The Commonwealth appealed from that opinion, arguing the issue was not properly preserved and any error was not palpable. Wright argues to the contrary and, because the Court of Appeals adversely addressed several issues raised by Wright, he cross-appeals. For the reasons set forth below, we reverse the Court of Appeals.

## I. BACKGROUND.

Sherri Klups testified at trial that she agreed to work with Officer Aaron Arsnperger as a confidential informant in exchange for dismissal of charges stemming from her unlawful possession of prescription pain medication. In her role as a confidential informant, Klups met with Officer Arnsperger on August 6, 2008. He searched her and her car, equipped her with an audio recorder, and told her to go to Sean Records's house and attempt to purchase drugs. Klups testified that she drove to Records's house and, when she knocked on the front door, he greeted her

and let her into the living room. When Klups went into the living room, she saw Wright and his girlfriend sitting there.

Klups asked Records if he had any drugs and he told her that he had some crack cocaine. The two then negotiated a purchase price, and Records and Wright left the living room together and went into the adjoining kitchen. Klups testified that she could not see into the kitchen but that she could hear Records and Wright talking, although she could not hear what they said. Klups testified that she also heard a refrigerator or freezer door open and close, and someone "rattling" baggies. A few minutes later, the two men came out of the kitchen. Records showed Klups a baggie with cocaine in it, which Klups said looked "mushy." When she asked Records about the condition of the cocaine, he told her that he had just gotten it from his source in Cincinnati, and it had gotten hot because he had hidden it in his pants during the drive home. According to Klups, Wright then said, "We stuck it in the freezer for a few minutes." Klups smelled the contents of the baggy to confirm that it was cocaine, paid Records, and left the house.

Additionally, Klups testified she believed Records and Wright were working together because: Wright kept a close watch over the proceedings; Wright accompanied Records into the kitchen; and Wright said they had put the cocaine in the freezer. As part of Klups's testimony, the Commonwealth played the audio recording of the transaction and introduced the recording into evidence.

During deliberations, the jurors asked if they could listen to the part of the recording wherein Wright talked about putting the cocaine in the freezer. After some discussion, the parties and the court agreed that bringing the jury back into the courtroom to play that part of the record-

ing was the appropriate course of action. The court did so and, after listening to the recording several times, the jurors returned to the jury room to deliberate.

Approximately one hour later, the jurors asked if they could listen to the recording in the jury room. Wright objected arguing that, pursuant to Kentucky Rule of Criminal Procedure (RCr) 9.74, all information must be presented to the jury in open court. The court disagreed and ruled that the recording was an exhibit and the jurors were free to review it during deliberations, as they could any other exhibit. However, the only equipment available on which to play the recording was the Commonwealth's attorney's laptop. The attorney admitted that the laptop might contain information related to Wright's case as well as information related to other cases, but he was unsure exactly what was on the laptop.

Following additional discussion with counsel, the court called the jurors into the courtroom and told them that there would be a short recess in deliberations so the attorneys could setup the laptop in the jury room. The attorneys then setup the laptop, and, after recalling the jurors, the court gave the foreperson the recording and told her the jurors could listen to it by using the laptop's Windows Media Player application. Before sending the jurors back to the jury room, the judge asked if he needed "to do anything else" and neither party said that he did.

Following further deliberations, the jury found Wright guilty, and Wright appealed his conviction to the Court of Appeals. The Court of Appeals reversed based on the jury's use of the Commonwealth's laptop to listen to the recording during deliberations. In doing so, the Court of Appeals stated as follows:

Allowing the jury to take the prosecutor's laptop into the deliberation room

with unfettered access to the laptop's files, as well as possible internet connection, was an abuse of the trial court's discretion. This situation is not as straightforward as sending a paper exhibit or tape cassette into the deliberation room, perhaps with portable speakers or another type of listening device. Here, the Commonwealth's laptop, which likely contained a sea of inadmissible and irrelevant evidence, was given to the jury to access in the privacy of the deliberation room with not even an admonition not to access any other files or the internet. Giving jurors unrestricted and unmonitored access to a party's laptop, outside of the defendant's presence, is highly improper and the likelihood of prejudice very high.

*Wright v. Commonwealth*, No. 2011–CA–000759–MR, 2013 WL 845020 (Ky.Ct.App. Mar. 8, 2013). We set forth additional background information as necessary below.

## II. STANDARD OF REVIEW.

Because the issues presented require us to apply different standards of review, we set forth the appropriate standard as necessary when addressing each issue.

## III. ANALYSIS.

### A. It Was Not Error for the Court to Permit the Jury to Review the Recording Using the Commonwealth's Laptop.

The Commonwealth argues that Wright did not properly preserve this issue and that Wright did not establish that any error was palpable. Wright argues to the contrary.

■ We first address the preservation issue. As noted by the Commonwealth, Wright argued before the trial court that the jury should only have been permitted to review the recording in open court. Wright did not specifically argue what he argues now—that the jurors should not have been permitted to use the Commonwealth's laptop. We agree with the Commonwealth that Wright did not specifically raise an issue related to use of the Commonwealth's laptop. However, Wright's argument that the jury should not have been permitted to listen to the recording in the jury room necessarily encompassed whatever device the jurors might use; therefore, the issue is preserved.

■ Having determined that this issue was preserved, we must next determine if the trial court properly permitted the jury to listen to the recording in the jury room. Finally, we must determine if the trial court erred in permitting the jury to do so using the Commonwealth's laptop.

■ The recording was admitted into evidence as an exhibit, and "[t]he trial court ultimately has the discretion to allow or disallow certain exhibits into the jury deliberation room." *Springfield v. Commonwealth*, 410 S.W.3d 589, 593 (Ky.2013). However, as we noted in *Springfield*, exhibits that are testimonial in nature, such as video of a witness's testimony, must be reviewed in open court. *Id.* at 593. In *Springfield*, the recording at issue was a video of the transaction between the defendant and a confidential informant. We held that video was not testimonial but a "real life [replay] of the central event in question," and the trial court did not err in permitting the jury to view the video in the jury deliberation room. *Id.* at 594. The recording herein, like the video in *Springfield*, is not testimonial but simply a "real life" record of what transpired; therefore, the trial court did not err by permitting the jury to listen to the recording in the jury deliberation room.

■ We must next determine if the Court of Appeals correctly decided that the trial court committed reversible error by permitting the jury to use the Commonwealth's laptop to listen to the recording. Initially, we note that we agree with the Court of Appeals that the parties must plan for such contingencies and have "clean" devices readily available for use by the jury. However, in this case, we disagree with the Court of Appeals that the trial court's decision rose to the level of reversible error.

RCr 9.24 states that:

No error ... or defect in any ruling or order, or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

The Court of Appeals based its decision on the *possibility* that the Commonwealth's laptop contained information that could have been prejudicial to Wright; the *possibility* that the jurors could have used the laptop to access the internet; and the trial court's failure to admonish the jury. As to the first reason given by the Court of Appeals, Wright has not provided any proof that there was any prejudicial information on the Commonwealth's laptop. The Commonwealth likely would not have permitted Wright to peruse the contents of its laptop to determine what, if any, prejudicial information it contained. However, if Wright was concerned about the contents of the Commonwealth's laptop, he could and should have asked the court to conduct an *in camera* review. He failed to do so, and we cannot say that the mere *possibility* that the laptop contained prejudicial information affected the substantial rights of the parties.

As to the second reason, Wright has not produced any evidence that the jury impermissibly used the laptop to access the internet or that internet access was even available. Again, we cannot say the mere *possibility* that internet access was available and the jury could have used the laptop to access the internet affected the substantial rights of the parties.

As to the third reason, before giving the jury chairperson the recording, the trial judge asked the parties if there was anything else he needed to do. Neither party responded. Wright had the opportunity at that time to ask the court to admonish the jury. He did not do so. We cannot, as the Court of Appeals did, fault the trial judge for failing to give an admonition he was not asked to give. Furthermore, failing to *sua sponte* give an admonition, if it was error, was not inconsistent with substantial justice.

Finally on this issue, we note that Wright also argued that the court should not have permitted the jury to use the Commonwealth's laptop because the laptop had not been introduced into evidence. In *Springfield* we implied, without specifically saying so, that the equipment used to play a recording in the jury deliberation room need not be introduced into evidence. 410 S.W.3d at 593–94. We now specifically hold that the equipment used by the jury to play a recording in the jury deliberation room need not be introduced into evidence.

**B. The Trial Court Did Not Err When It Denied Wright's Motion for Directed Verdict.**

■ Following the Commonwealth's case in chief, Wright moved for a directed

verdict. The trial court denied that motion, finding that there was sufficient evidence to submit the case to the jury. The Court of Appeals agreed with the trial court, and Wright again raises this issue in his cross-appeal.

On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purposes of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal. *Commonwealth v. Benham,* 816 S.W.2d 186 at 187 (Ky.1991).

A person is guilty of complicity to trafficking in a controlled substance in the first degree if, "with the intention of promoting or facilitating the commission of [that] offense, he: (a) Solicits, commands, or engages in a conspiracy with ... [an]other person to commit [that] offense; or (b) Aids, counsels, or attempts to aid ... [an]other person in planning or committing [that] offense." Kentucky Revised Statute (KRS) 502.020. There is no dispute that Records sold cocaine to Klups in an amount sufficient to bring him within the confines of KRS 218A.1412, the First-degree trafficking statute. Thus, the Commonwealth was required to show that Wright was complicit in that transaction.

As proof that Wright aided Records in the transaction, the Commonwealth offered the testimony of Klups that she went to Records to purchase illegal drugs; Wright was present during the sale; Wright took a particular interest in the transaction by watching over the proceedings; Wright went with Records into the kitchen when Records got the cocaine; while Wright and Records were in the kitchen, Klups overheard them talking, she overheard someone rattling baggies, and she overheard a freezer or refrigerator door open and close; and Wright stated that "we put the cocaine in the freezer" when Klups questioned Records about its condition. The Commonwealth also offered the tape recording of the transaction and the testimony of Officer Arnsperger that he recognized Wright's voice on the recording stating they had put the cocaine in the freezer. Based on that evidence, the jury could have inferred that Wright was involved in the preservation and packaging of the cocaine for sale to Klups, and that he was guilty of complicity.

In support of his argument, Wright sets forth in detail testimony from Records that, at least in part, contradicted the Commonwealth's evidence. However, Wright's reliance on Records's testimony is misplaced for two reasons. First, Records testified in Wright's case in chief, and Wright did not renew his motion for directed verdict following Records's testimony. Therefore, the trial court could not have considered Records's testimony in denying Wright's motion. Second, even if Wright had renewed his motion for a directed verdict at the conclusion of his case, weighing the evidence and assessing the credibility of the witnesses is for the jury, not the court. The court must view the evidence in the light most favorable to the Commonwealth, thus Records's testimony contradicting the Commonwealth's evidence was largely irrelevant to the issue. Having reviewed the record, we cannot say

that the trial court erred when it denied Wright's motion for a directed verdict.

## C. Admission of Officer Arnsperger's Testimony Interpreting and Narrating the Recording Was Not Palpable Error.

During his testimony, Officer Arnsperger stated Wright could "clearly" be heard on the recording stating that "they" put the cocaine in the freezer. Officer Arnsperger also testified that, in his experience, drug sales often involve people who "bring the drugs" and "people [who] sell" the drugs. Those people fall into two categories, "talkers," who generally conduct the sale, and "hit men," who "sit back and watch" and make "a few comments like the defendant did in the tape during the transaction." Wright complains that this testimony amounted to inadmissible narration or interpretation of the contents of the recording.

Wright did not object to Officer Arnsperger's testimony; therefore, this issue is unpreserved, and we review it for palpable error. RCr 10.26. An error is palpable if it affects a party's substantial rights and results in a manifest injustice to the party. *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 837 (Ky.2003). "Furthermore, an appellant claiming palpable error must show that the error was more likely than ordinary error to have affected the jury." *Boyd v. Com.*, 439 S.W.3d 126, 129–30 (Ky.2014). With these standards in mind, we address Wright's argument.

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the

provisions of KRE 703, relating to opinion testimony by expert witnesses.

Kentucky Rule of Evidence (KRE) 602. Thus,

narration of a [recording] may be proper but only if it is comprised of opinions and inferences that are rationally based on the witnesses' own perceptions of which he had personal knowledge and that are helpful to the jury. Furthermore, witnesses are limited to a description of events when narrating [a recording] and any interpretation of that footage is improper.

*Boyd v. Commonwealth*, 439 S.W.3d 126, 131 (Ky.2014).

In context, Officer Arnsperger's testimony regarding Wright's statement about putting the cocaine in the freezer is a mixed bag. Officer Arnsperger, who said he knew Wright, gave that testimony in response to the Commonwealth's question about when he first heard Wright's voice on the recording. If Officer Arnsperger had stopped there, his testimony likely would have been acceptable, because he had personal knowledge regarding the sound of Wright's voice. However, he went on to discuss who was in the kitchen, who handed the cocaine to Klups and other matters of which he had no personal knowledge and which he did not observe. Therefore, that testimony was improper. Furthermore, Officer Arnsperger's opinion regarding the role Wright played in the transaction—"hit man"—amounted to improper interpretation.

Having determined that portions of Officer Arnsperger's testimony were improper, we must determine if admission of that testimony amounted to palpable error. We conclude that it did not.

As to Officer Arnsperger's testimony regarding who was present and who said what, that testimony tracked and was consistent with Klups's testimony. Klups

was present when the recording was made, and her testimony about who was present and who said what, was admissible. Therefore, while it may have been duplicative, we cannot say that Officer Arnsperger's testimony regarding who was present and who said what resulted in manifest injustice or had a greater impact on the jury's verdict than ordinary error would have.

We find Officer Arnsperger's testimony about Wright's role as "hit man" to be more problematic. Officer Arnsperger was not qualified as an expert witness; therefore, his opinions regarding what role Wright played should have been limited to inferences or opinions rationally based on his perceptions. KRE 701(a). As noted above, Officer Arnsperger was not present when the recording was made; therefore, any opinions about Wright's role could not have been based on Officer Arnsperger's perceptions. Furthermore, in describing Wright's role in the transaction, Officer Arnsperger used the unnecessarily pejorative term "hit man."

Despite the preceding shortcomings, we cannot say that Officer Arnsperger's "hit man" testimony had a more significant impact on the outcome than ordinary error. Officer Arnsperger explained the origin of that term and the jury could verify the accuracy of his testimony that Wright did not say much. Furthermore, Officer Arnsperger's testimony that Wright took a supervisory role was verified by Klups, who was present. Therefore, although we are troubled by this testimony and caution the Commonwealth to avoid such testimony, we cannot say its admission in this case amounted to palpable error.

### D. Admission of Officer Arnsperger's Bolstering of and Vouching for Klups Was Not Palpable Error.

Officer Arnsperger testified at length about the procedure he follows when using a confidential informant to purchase illegal drugs. During that testimony he indicated several times that he takes steps to ensure that the confidential informants he uses are honest, credible, and trustworthy. According to Officer Arnsperger, if a confidential informant does not meet those criteria, he or she is not useful and any charges resulting from an illegal drug purchase have to be dismissed. The steps Officer Arnsperger takes to ensure a confidential informant's credibility include searching the informant and the informant's vehicle to ensure that he or she is not carrying any drugs before making a purchase and that no purchased drugs were taken by the informant. Following this general testimony, Officer Arnsperger testified that he had used Klups "for quite a while" before August 6, 2008. Wright did not object to any of this testimony.

On appeal, Wright argues that Officer Arnsperger's testimony amounted to impermissible vouching for and bolstering of Klups. The Court of Appeals determined that Officer Arnsperger's testimony ran afoul of Kentucky Rule of Evidence (KRE) 404(a), which prohibits the admission of character evidence "for the purpose of proving action in conformity therewith."

We agree with the Court of Appeals that Officer Arnsperger's testimony amounted to improper character evidence. In doing so, we note, as did the Court of Appeals, that character evidence may be admissible if offered to rebut an attack on a witness's credibility. *See Fairrow v. Commonwealth,* 175 S.W.3d 601, 606 (Ky. 2005)("KRE 608(a)(2) requires credibility to be attacked before it is supported."). Officer Arnsperger testified before Klups; therefore, her credibility had not been attacked, and Officer Arnsperger's testimony

regarding Klups's credibility should not have been admitted.

■ However, unlike the Court of Appeals, we cannot stop our analysis there. We must determine whether admission of Officer Arnsperger's testimony amounted to palpable error. As set forth above, palpable error affects a party's substantial rights and results in a manifest injustice to the party. *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 837 (Ky.2003).

In *Fairrow*, an officer testified that his confidential informant was reliable because the officer had obtained convictions in each of the cases in which the informant was involved. 175 S.W.3d at 605. We determined that this testimony was impermissible character evidence. However, we found "that .... the admission of improper evidence of the character of a mere witness" did not affect Fairrow's substantial rights nor did it constitute manifest injustice sufficient "to require reversal as palpable error." *Id.* at 607.

Wright argues that this case differs from *Fairrow* because, unlike in this case, there was overwhelming evidence of Fairrow's guilt. Giving deference to Wright's argument, it remains that this Court did not cite overwhelming evidence of guilt as a reason to support its finding. Wright also argues that *Fairrow* is distinguishable because Officer Arnsperger testified before Klups. However, the officer in *Fairrow*, like Officer Arnsperger, "was the Commonwealth's first witness." *Id.* at 606. Therefore, we discern no reason to distinguish or depart from *Fairrow*. Accordingly, we hold that admission of Officer Arnsperger's testimony regarding Klups's credibility did not constitute manifest injustice sufficient to require reversal as palpable error.

## E. Admission of Klups's Testimony Regarding Wright's "Guilt" and Mental State Was Not Palpable Error.

■ Klups testified the she negotiated the purchase of the cocaine with Records; that she gave money to Records; and that Records then gave her the cocaine. However, she also testified that: both Records and Wright were involved in the transaction; Wright was trying to induce her into purchasing the cocaine by commenting that it had been in the freezer; and Wright monitored the transaction "like he was ... part of it."

Wright, who did not object to this testimony at trial, argues that it was improper because Klups invaded the province of the jury by expressing an opinion regarding Wright's guilt and that she improperly gave an opinion regarding his state of mind. The Court of Appeals determined that admission of Klups's testimony was not error because she was merely testifying as to her observations.

Because Wright did not properly preserve this issue, we review it for palpable error. RCr 10.26.

KRE 701 provides that:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are:

(a) Rationally based on the perception of the witness;

(b) Helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and

(c) Not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

■ "The degree to which a witness may give an opinion, of course, is predicated in part upon whether and the extent to which the witness has sufficient life experi-

ences that would permit making a judgment as to the matter involved." *Hunt v. Com.*, 304 S.W.3d 15, 35 (Ky.2009), *as corrected* (Jan. 6, 2010), *as modified on denial of reh'g* (Mar. 18, 2010) (*citing Mondie v. Commonwealth*, 158 S.W.3d 203, 212 (Ky. 2005)).

Wright argues that Klups's statement that he participated in the transaction was an impermissible opinion regarding his guilt. In support of that argument Wright cites *Nugent v. Commonwealth*, 639 S.W.2d 761 (Ky.1982) and *Bussey v. Commonwealth*, 797 S.W.2d 483 (Ky.1990). Both cases are distinguishable. In *Nugent*, the witness specifically stated that he thought Nugent killed the victim. However, the witness did not see the crime, and the evidence of Nugent's guilt was entirely circumstantial; therefore, the witness's testimony was not rationally based on his perception. In *Bussey*, a police officer testified that he had come "to the conclusion that there had to have been some type of misconduct or [he] would not have received a complaint." 797 S.W.2d at 485. The Court determined that this testimony was inadmissible because the officer was commenting on the victim's credibility not because the officer was commenting on the defendant's guilt. *Id.*

Unlike the witness in *Nugent*, Klups's opinion that Wright participated in the transaction was based on her personal observations and perceptions. Klups observed Wright leave the living room with Records; she overheard Wright and Records talking and a baggy or baggies being rattled while the two were in the kitchen; she observed Wright and Records return from the kitchen at the same time; and, when she expressed concern about the quality of the cocaine, she heard and observed Wright when he said, "We put [the cocaine] in the freezer for a few minutes." Based on these personal observations and her life experience as a confidential informant and illegal drug user, Klups was qualified to infer that Wright participated in the transaction. Furthermore, unlike the officer in *Bussey*, Klups was not commenting on any witnesses' credibility. She was simply testifying about what she observed and drawing inferences based on her life experience. Therefore, we discern no error in the admission of Klups's testimony.

### IV. CONCLUSION.

For the foregoing reasons, we reverse the Court of Appeals.

All sitting. All concur.