# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: NOVEMBER 1, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

## 2017-SC-000621-MR

DATE 3/14/19 Kim Redman, DC

GERRY E. LAWSON        APPELLANT

|   | ON APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| V. | HONORABLE DARRYL S. LAVERY, JUDGE |
|   | NO. 13-CR-001816 |

COMMONWEALTH OF KENTUCKY        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

In the early morning hours of March 3, 2013, Appellant, Gerry E. Lawson, killed Vernice Aniton at her home through beating and strangulation. Afterward, he left the scene, filled up several cans with gasoline at a nearby filling station, returned to Aniton's home, and set it ablaze with her body inside. The conflagration spread to a nearby rooming house. During the incident, Lawson sustained substantial burns. He fled but was later apprehended in Dallas, Texas. Lawson had burn marks on his right arm.

During the investigation of Aniton's residence, an arson dog alerted agents to the presence of hydrocarbons. Kentucky State Police lab analyses showed the presence of gasoline in nine samples taken from her residence,

including around the bed frame upon which her charred remains were discovered. Arson investigators discovered several toilet paper rolls stuck beneath Aniton's remains—presumably to serve as kindling—and identified a strong gasoline smell near her body. Arson Investigator Hillary Washington concluded the fire had multiple points of origin throughout Aniton's residence and had been intentionally fueled with an accelerant.

On July 2, 2013, a Jefferson County Grand Jury indicted Lawson on one count each of murder, second-degree arson, third-degree arson, first-degree wanton endangerment, tampering with physical evidence, abuse of a corpse, and second-degree cruelty to animals.

On June 20, 2017, the trial began. Medical Examiner Dr. Donna Stewart testified that, because there was no soot found in Aniton's trachea and the levels of carbon monoxide in her blood were low, she believed the victim died before the fire was set. Additionally, Aniton's remains displayed signs of beating and strangulation.

A Jefferson County jury convicted Lawson of murder, second-degree arson, third-degree arson, first-degree wanton endangerment, and tampering with physical evidence. Based upon the jury's recommendation, the trial court sentenced him to 70 years' imprisonment. Lawson now appeals his judgment and sentence as a matter of right pursuant to Section 110(2)(b) of the Kentucky Constitution.

2

## Analysis

## Expert Testimony

For his first argument, Lawson claims the trial court abused its discretion in allowing a certified forensic nurse practitioner to testify that burns she observed on Lawson could have been caused by heat. "[W]e review a trial court's evidentiary rulings for an abuse of discretion." *Meece v. Commonwealth*, 348 S.W.3d 627, 645-46 (Ky. 2011) (citing *Penman v. Commonwealth*, 194 S.W.3d 237, 245 (Ky. 2006)). "A trial court's decision regarding the admissibility of evidence is reviewed for an abuse of discretion." *Ross v. Commonwealth*, 455 S.W.3d 899, 910 (Ky. 2015). Abuse of discretion occurred if "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

After Lawson was transported from Texas to Kentucky, Sally Sturgeon, an advanced registered nurse practitioner and board-certified forensic nurse examiner, documented and photographed Lawson's injuries. Specifically, her examination report noted injuries "consistent with partial thickness to full thickness burns" on Lawson's right forearm, as well as the right side of his face and neck. Her report did not mention whether fire or heat could have caused the burns. However, she recorded that Lawson told her the cause of the two burns: the one on the right side of his face and neck was caused by "some chemicals [he] was working with a few months ago," and the burn on his arm was caused when he was grabbed by "a demon."

3

At trial, defense counsel objected under Kentucky Rule of Criminal Procedure (RCr) 7.24(1)(c) when the Commonwealth asked Sturgeon about the types of phenomena that can cause full thickness burns. Her report did not state that the burns were caused by fire, heat, chemicals, or another method. The trial court overruled the objection, stating that the witness could be cross-examined about the cause of the burns. Sturgeon went on to describe thermal burns, which are caused by heat or flames. On cross-examination, she agreed with defense counsel that electricity, chemicals, radiation, and other means can also cause burns. Notably, she never testified about her belief as to what caused Lawson's burns.

Under RCr 7.24(1)(c) provides that:

[U]pon written request by the defense, the attorney for the Commonwealth shall furnish to the defendant a written summary of any expert testimony that the Commonwealth intends to introduce at trial. This summary must identify the witness and describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Defense counsel argues that because the written summary of Sturgeon's expert testimony did not describe her opinion about the cause of Lawson's burns, but merely that Lawson had injuries "consistent with . . . burns," Lawson's Fourteenth Amendment right to a fair trial was violated when Sturgeon testified that heat or flames could cause burns.

Her trial testimony, which was consistent with her report, concerned, *inter alia*, that she observed a wound on the "forearm and elbow of Mr. Lawson's right arm . . . consistent with a burn." Also, she observed a wound

4

"along the right side of Mr. Lawson's face and neck . . . an area of hyperpigmentation which is . . . consistent with a burn."

Clearly, Sturgeon's statements derived from her specialized training as a nurse practitioner and licensed forensic examiner. The testimony primarily concerned her notes, which were taken upon physical examination of Lawson's wounds. The witness merely testified as to her medical observations and the general methods by which burns can be caused.

Based upon the written summary of Sturgeon's evaluation, which was provided to defense counsel, Lawson had notice that Sturgeon was going to testify regarding her forensic examination of his burn-consistent injuries. Her notes clearly state that, in her opinion, she believed Lawson's injuries were "consistent with . . . burns." Sturgeon's qualifications entitled her to testify regarding the types of phenomena that can cause flesh to burn. Expert testimony involves "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Kentucky Rule of Evidence (KRE) 702.

The trial court determined that Sturgeon's statement about the potential causes of burns was layperson testimony. Although the statement that heat or flames can cause burns, among other methods, is arguably common knowledge layperson testimony, her status as a medical professional gave weight to her statements as being derived from "scientific, technical, or other specialized knowledge." While we find that the trial court was mistaken in referring to Sturgeon's testimony as layperson testimony, we find the trial court's error in

5

labeling the evidence was harmless. In conformity with RCr 7.24(1)(c), Lawson had notice of the expert's intent to testify about her medical examination of him. Thus, there was no abuse of discretion.

## Hearsay Challenges

For his second argument, Lawson claims the trial court abused its discretion when it declined to admit two statements allegedly made by Jermaine Simmons. Lawson proffered a defense that Simmons was the actual perpetrator of Aniton's murder. In order to build this defense, counsel attempted to enter two statements allegedly made by Simmons. The trial court held that both of those statements were inadmissible hearsay.

One statement Simmons allegedly made was to Lawson. On direct examination, defense counsel asked Lawson, "what did [Simmons] say to you?" The Commonwealth objected on hearsay grounds. When arguing for admission of Lawson's response, defense counsel stated at bench conference: "What Gerry's going to testify to is that Jermaine told him that he was going over to Vernice's house to collect money from her. It's not for hearsay, it's for the effect on the listener."

The second statement Simmons allegedly made was to Victor Spalding, who owed Simmons drug money. Defense counsel asked Spalding, concerning his "on credit" purchase of cocaine from Simmons, "Did you ever have any . . . discussions with Jermaine about what would happen if you didn't pay him back?" Again, the Commonwealth objected on hearsay grounds. When

6

arguing for admission of Spalding's response, defense counsel stated at bench conference:

> Rather than make an avowal, in the statement that he made, he said that if he didn't pay, Jermaine threatened his life. And I think the threat to his life from Jermaine . . . is relevant . . . . He called the police to tell them that and [Detective] Wilder told him afterwards, "don't worry about it." So, I think that it was his motive for calling the police that day as much as anything, that he'd been threatened by Jermaine, and I think that might add to its relevance.

Evidentiary rulings are reviewed for an abuse of discretion. *Meece*, 348 S.W.3d at 645-46. Hearsay is defined as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." KRE 801(c).

Lawson cites *Daugherty v. Commonwealth*, 467 S.W.3d 222 (Ky. 2015), for the notion that Simmons' statements were "verbal acts" and therefore not hearsay. In *Daugherty*, this Court recognized that "a command, like a threat or a question, is a verbal act," and therefore not hearsay. *Id.* at 229. This Court elaborated:

> Hearsay does not mean any or all out-of-court statements; rather, hearsay means only "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." KRE 801(c). And a statement consisting of a command to another person is not offered for the truth of the matter asserted . . . .

*Id.*

Here, we do not find any admissible verbal acts. First, Simmons' alleged statement to Lawson was not a threat, and it was not introduced just to show the statement was made. Its relevant purpose would be to show that Simmons did, in fact, follow up on his statement by going to Vernice's house. That fact

7

would place Simmons at the crime scene and give him a motive for killing the victim. Therefore, by offering Simmons' out-of-court statement for the truth of the matter asserted, it fits the very definition of hearsay. Furthermore, it does not satisfy any hearsay exceptions.

Next, Simmons' statement to Spalding was a threat against Spalding's life, not the victim. It is irrelevant. The defense was positing that Simmons threatened to kill those who did not pay him. However, a threat made by a third party against a third party not even involved in the alleged murder is not relevant. "[A] threat to kill or injure someone which is specifically directed at some individual other than the deceased is inadmissible, as it shows only a special malice resulting from a transaction with which the deceased had no connection." *Jones v. Commonwealth*, 560 S.W.2d 810, 812 (Ky. 1977). Whether Simmons' alleged threat to Spalding was a "verbal act" is immaterial because that evidence is entirely irrelevant to the case at bar.

Therefore, the trial court did not abuse its discretion by sustaining the Commonwealth's objection to the aforementioned statements.

### Party Admission

For his third argument, Lawson alleges that the trial court committed reversible error when it allowed the Commonwealth to play part of a police interview recording in open court, wherein Lawson stated he once had a disagreement with the victim.

Notably, the recording was already admitted into evidence. Lawson's recorded statement was an admission under KRE 801A(b)(1), wherein Lawson

8

admitted to having a disagreement with Aniton prior to her death. This evidence is relevant, not unduly prejudicial, and admissible as a party admission. Further, "[t]he recording was admitted into evidence as an exhibit . . . [and] exhibits that are testimonial in nature, such as video of a witness's testimony, *must* be reviewed in open court." *Commonwealth v. Wright*, 467 S.W.3d 238, 243 (Ky. 2015) (emphasis added). Thus, the trial court did not err in permitting the Commonwealth to play the interview recording for the jury.

## Statement to Jury Concerning Sentencing

Lastly, Lawson claims the trial court erred when it answered a jury question regarding parole eligibility during the sentencing phase. Following Lawson's conviction, but during the jury's sentencing phase deliberations, the jury sent out a written question. The trial court read aloud to counsel the question posed to it by the jury: "if we fix charges consecutively, is he still eligible for parole, and then they have an example, 50 murder, 20 arson?" During the sentencing phase, a probation and parole officer had provided testimony to the jury regarding parole eligibility but did not specify whether Lawson would be parole eligible if his sentences ran consecutively. Over defense counsel's objection, the trial court answered in the affirmative. Defense counsel argues that Lawson is entitled to a new sentencing phase, alleging that the trial court's "yes" answer to the jury's sentencing question was new, improperly-introduced evidence that violated Lawson's due process rights under the Fourteenth Amendment to the United States Constitution.

9

Although the Commonwealth argues, and the trial court apparently believed, this was purely a question of law which the trial judge was able to answer, we must disagree. Information about parole eligibility typically comes into the penalty phase through the testimony of a probation and parole witness, as it did here. Even though this testimony includes some information that is purely legal (*e.g.*, this is a violent crime and therefore a defendant must serve 85% of the sentence before being eligible for parole), it is nonetheless relevant sentencing information that is offered as evidence. The judge has no role in providing information on parole eligibility. By doing so here, the judge introduced new information or evidence to the jury after it had retired to deliberate. *See* RCr 9.74 ("No information requested by the jury or any juror after the jury has retired for deliberation shall be given except in open court in the presence of the defendant (unless the defendant is being tried in absentia) and the entire jury, and in the presence of or after reasonable notice to counsel for the parties."). After the jury retired to deliberate, the judge could not provide any additional information except through RCr 9.74, if appropriate, or by agreement of counsel that the question could be answered, thereby waiving any objection. The judge erred in answering this question, but we do not find that the accurate answer denied Lawson's due process rights or otherwise affected his substantial rights. It was harmless error. RCr 9.24. We caution our trial judges that juries frequently ask questions during deliberations and generally those inquiries ask for information that the judge cannot

10

provide. Trial judges should proceed with caution because an answer will often not be harmless.

## Conclusion

For the foregoing reasons, we hereby affirm the judgment of the Jefferson Circuit Court.

All sitting. Minton, C.J.; Hughes, Keller, VanMeter, and Venters, JJ., concur. Cunningham, J., concurs in result only by separate opinion, which Wright, J., joins.

CUNNINGHAM, J., CONCURRING IN RESULT: I concur in result.

RCr 9. 74 states: "No information requested by the jury or any juror after the jury has retired for deliberation shall be given except in open court in the presence of the defendant . . . and the entire jury, and in the presence of or after reasonable notice to counsel for the parties." Here, during the sentencing stage, the jury sent out the written question, but did not return to the court room. Therefore, the trial court failed to comply with RCr 9.74. And the defense counsel objected to an answer being given.

So, I agree there was error.

However, I depart from the majority in its holding that it would have been error regardless, since the answer was one of evidence and not law. I disagree. It was actually a mixture of fact and law. Sure enough, that information is usually introduced through a witness, such as a probation officer. However, it is a matter of law that consecutive sentences do not disqualify a defendant from being eligible for parole.

11

Also, this court has held that a judge may answer a question from the jury during deliberations on sentencing that relates to facts and a point of law. *Stokes v. Commonwealth,* 275 S.W.3d 185 (Ky. 2008). That case dealt with a sodomy upon a child. A prior conviction for a sexual offense was introduced at the sentencing stage. After deliberating for only a short time the jury sent out the question, "We want to know if the prev. conv. was on a child?" *Id.* at 190. Over objection of the defendant, the trial judge informed the jury that the victim of the previous conviction was under 14 years of age. We held that "such proof can be given" by the trial court, "providing the qualifiers are met." *Id.* at 192. These "qualifiers" are the parameters set down by RCr 9.74. While it is not entirely clear if those conditions were met in *Stokes,* we have to assume they were in light of the ruling.

Therefore, had RCr 9.74 been strictly complied with in this case, there would have been no error, harmless or otherwise.

Therefore, I must respectfully concur in result only.

Wright, J., joins.

COUNSEL FOR APPELLANT:

Joshua Michael Reho
Daniel T. Goyette
Louisville Metro Public Defender of Counsel


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

James Coleman Shackelford
Assistant Attorney General